**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph R. KOLLER, Defendant–
Appellant.**

No. 90–3787.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1991.

Decided March 3, 1992.

Order on Denial of Rehearing and
Rehearing En Banc April 22, 1992.

Matthew L. Jacobs, Asst. U.S. Atty., Milwaukee, Wis. (argued), for plaintiff-appellee.

Michael O. Bohren, Milwaukee, Wis. (argued), for defendant-appellant.

Before BAUER, Chief Circuit Judge, RIPPLE, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

A jury found Joseph Koller guilty of conspiring to distribute cocaine, distributing cocaine, possessing in excess of 500 grams of cocaine with the intent to distribute, money laundering, and possession of an interstate firearm as a convicted felon. Judge Evans, Eastern District of Wisconsin, sentenced him to 20 years on each of five counts and 27 years on each of three counts, all to be served concurrently. Koller appeals.

Shia Ben–Hur testified that he had sold cocaine to Koller on twenty-one occasions in 1987 and 1988. Koller resold some of this cocaine to Arlyn Ackley who sold it to an undercover agent on four occasions. Those sales formed the basis for Counts TWO through FIVE of the indictment charging violations of 21 U.S.C. § 841(a)(1). Ben–Hur was arrested for an unrelated cocaine sale in September 1988. Ben–Hur agreed to cooperate with the government in its investigation of several suspected drug traffickers, including Koller. Ben–Hur participated in a government controlled sale of 512 grams of cocaine to Koller, resulting in Count SIX of the indictment and an additional violation of § 841(a)(1). Koller was also charged with (Count ONE) and convicted of conspiring to distribute cocaine in violation of 21 U.S.C. § 846. Counts ONE and SIX involved more than 500 grams of cocaine. Koller was convicted on Count SEVEN, money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and on Count EIGHT, possession of an interstate firearm as a convicted felon in violation of 18 U.S.C. § 922(g).

On this appeal Koller challenges various aspects of his conviction and sentence. Each argument will be addressed separately and any facts particularly relevant to that argument will be set out in the discussion.

## I. MONEY LAUNDERING

Koller challenges the sufficiency of the evidence to support the money laundering conviction on count SEVEN. In April, 1988, Koller's girl friend, Jane Vossekuil, was taken into state custody for violation of her probation, because she had not paid her restitution obligation. She was told that her probation would be revoked unless she paid. Jane called Koller and asked him if he would pay it. He agreed and indicated that he would get some of the money from outstanding drug debts. After gathering the money, Koller went to the probation office and attempted to pay Jane's restitution obligation with over $2000 in cash. The probation officer, Ms. Ware, would not accept that amount of cash and told Koller that he needed to get a money order. Koller then took the cash to nearby Security Bank and purchased a money order. He told the teller that he needed the money in order to get his girl friend out of jail. There was no evidence that he was asked his name or that he made any misrepresentation to the bank. Koller returned to the probation office with the

money order and used it to pay Jane's restitution obligation. Ms. Ware wrote out a receipt for the payment to "Gerald Kohler." Although Ms. Ware did not testify specifically that he told her his name was Gerald, she testified that she asked him how to spell his name or that she asked him how to spell "Gerald" and that he spelled it. She was unsure whether she confirmed the spelling of his last name. On cross examination she said that that was the only time he told her his name. A rational juror could infer from her testimony and the name on the receipt that Koller told her his first name was "Gerald" and could also infer that in doing so it was his design to conceal and disguise his identity as the owner of the money order and the funds it represented.[1]

Congress enacted the Money Laundering Control Act of 1986, Pub.L. No. 99–570, § 1352, 100 Stat. 3207–18 (codified at 18 U.S.C. § 1956), to make money laundering a crime and, thus, prevent drug traffickers from enjoying the profits of their crime. S.Rep. No. 433, 99th Cong., 2d Sess. 4 (1986). Senator Biden emphasized, upon introduction of the Senate Bill, that "[d]rug traffickers need money laundering to conceal the billions of dollars in cash generated annually in drug sales and to convert his [sic] cash into manageable form." *Id.* Section 1956(a)(1)(B)(i) makes it a crime to conduct a financial transaction knowing that the property involved in the transaction represents the proceeds of some form of unlawful activity and knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of those proceeds.

There was a conflict in the evidence as to the source of the funds represented by the money order. Jane Vossekuil testified that Koller told her he was going to use the proceeds of his drug dealing, and there was evidence of such dealings. On the other hand, Ms. Vossekuil, Koller and others testified that he had borrowed the funds. Koller seems to argue that this was insuffi-

cient support for a verdict that the money originated from drug dealing, although he also seems to concede that the jury could disbelieve his witnesses. We think the jury could properly resolve this conflict against Koller.

Koller also argues that his payment of Ms. Vossekuil's obligation was not an offense because in a "classic" money laundering case the transaction is designed to hide the tainted money by converting it into something valuable which will provide a benefit for the money launderer. Here Koller obtained only Ms. Vossekuil's gratitude or perhaps her contractual obligation to repay the money.

It is true that one court has, in overturning money laundering convictions, considered whether the transaction could be described as a typical money laundering transaction, rejecting the argument that "the money laundering statute should be interpreted to broadly encompass all transactions, however ordinary on their face, which involve the proceeds of unlawful activity." *United States v. Sanders,* 928 F.2d 940, 946 (10th Cir.1991) (quoted in *United States v. Jackson,* 935 F.2d 832, 841 (7th Cir.1991). *Sanders* can readily be distinguished, and in *Jackson,* this court affirmed the conviction. We do not think the argument can be successful here. Even if Koller was making an outright gift to Ms. Vossekuil, a "transaction" is defined in this statute as including a gift. 18 U.S.C. § 1956(c)(3) (1988).

There are two transactions in this case, the purchase of the money order and the transfer of the money order to the probation officer in payment of Ms. Vossekuil's obligation. Because it is so clear that the purchase of the money order involved no concealment, we have considered, though not argued by Koller, whether that fact would prevent conviction for the second transaction.

In order to convict, the second transaction (where there was evidence of a design

---

1. He also had a motive for concealing ownership of funds which could raise a question as to their source. Koller's state parole agent testified that Koller reported to him bimonthly as to his activities. At each such meeting, Koller was required to sign a statement declaring that the report was a true account of his activities and that he understood that providing false information could constitute sufficient cause for revocation of his parole.

to conceal) must be a "financial transaction" as defined in 18 U.S.C. § 1956(c)(4). The part of the definition relevant here is as follows: "a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree." 18 U.S.C. § 1956(c)(4)(B) (1988). The government did introduce evidence of the activity of Security Bank, the issuer of the money order, in and affecting interstate commerce. In the case before us, there is no evidence that the purchase and use of a money order, and in that sense a "use" of the bank which issued it, was any part of the design to conceal or disguise anything about the funds. Had Koller used cash, as he originally attempted, and concealed his ownership, there would have been no proof of a "financial transaction" and therefore no offense under § 1956(a)(1). Such a transaction would have been a "financial transaction" only if the *transaction* "in any way or degree affects interstate or foreign commerce." 18 U.S.C. § 1956(c)(4)(A). There was no evidence that it did. The statute does not, however, literally require that the use of the financial institution with the interstate commerce nexus be a part of, contribute to, or facilitate the design to conceal, and since the purpose of the interstate commerce nexus is to provide a predicate for federal legislative jurisdiction, we think that the use of the financial institution involved in the transaction may be incidental, as it was here, and need not be shown to have been a part of, contributed to, or facilitated the design to conceal.

## II. SPEEDY TRIAL

Koller objects to his conviction as in violation of the Speedy Trial Act, 18 U.S.C. § 3161, and the Fifth and Sixth Amendments. A summary of the chronology will aid in understanding the discussion. The conspiracy charged in Count ONE continued from May 8, 1987, to August 10, 1988. Four of the substantive offenses occurred from November 10, 1987, to December 22, 1987. The other three occurred from April 8, 1988, to November 2, 1988. Koller was originally arrested on November 2, 1988, and formal charges, in the form of a complaint, were filed the following day. Koller

was then held without indictment until December 8, 1988, when the complaint was dismissed because the defendant's state parole was subject to revocation and he was taken into state custody. A new complaint was issued on December 15, 1989, and Koller was arrested upon his release from state custody December 18, 1989, pursuant to a warrant. Koller was indicted on January 16, 1990, and brought before a judicial officer on January 18, 1990. A superseding indictment was filed on February 7, 1990. After delay resulting from defense motions and the serious illness of a government witness, the trial began on September 5, 1990.

### A. Speedy Trial Act

The speedy trial clock ultimately began to run with the December 18, 1988, arrest, 18 U.S.C. § 3161(d)(1) (1989); *United States v. Nesbitt*, 852 F.2d 1502, 1513 (7th Cir.1988), *cert. denied*, 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989); *See also, United States v. Samples*, 713 F.2d 298, 302–03 (7th Cir.1983) ("if an indictment is dismissed and the person is subsequently arrested, the re-indictment must be filed within thirty days of the subsequent arrest") and *United States v. Bittle*, 699 F.2d 1201, 1205 (D.C.Cir.1983), and the indictment of January 16, 1990, was filed within the required 30 days, 18 U.S.C. § 3161(b) (1989). The trial began 230 days after Koller's initial appearance before a judicial officer. Judge Evans found 153 days excludable because government witness Ben–Hur was unavailable and 19 days excludable due to a necessary substitution of defense counsel. Those exclusions reduce the delay to 58 days, well within the 70 days required. 18 U.S.C. § 3161(c)(1) (1989).

Koller challenges only the sufficiency of the showing upon which Judge Evans found witness Ben–Hur unavailable, a ground for exclusion under § 3161(h)(3). Shia Ben–Hur, the government's informant, had suffered a heart attack and was recovering from triple-bypass open-heart surgery. The government submitted the affidavit of the Assistant U.S. Attorney in charge of the case, in which she gave de-

tailed information obtained from the witness' attorney regarding Ben–Hur's medical condition, his inability to testify, and the essential nature of his testimony. Koller argues that this evidence was hearsay and, therefore, insufficient. The determination of preliminary questions, such as the unavailability of a witness, is normally determined by the district judge in the exercise of his or her discretion. In making comparable preliminary determinations, the district judge is not bound by the rules of evidence. *See,* Fed.R.Evid. 104 (1990) and *United States v. Faison,* 564 F.Supp. 514, 518 (D.N.J.), *aff'd without opinion,* 725 F.2d 667 (3d Cir.1983). Decisions suggest that preliminary determinations made pursuant to the Speedy Trial Act should be accorded some deference. *See, United States v. Bourne,* 743 F.2d 1026, 1030–31 (4th Cir.1984) and *United States v. McNeil,* 911 F.2d 768, 773–74 (D.C.Cir.1990). Where, as in this case, the affidavit set out facts describing the medical condition of the witness and there was no evidence to suggest that the government's affidavit was untruthful or its information unreliable, the showing was sufficient for the district judge to find the witness unavailable due to his medical condition pursuant to § 3161(h)(3) of the Speedy Trial Act. The witness' own testimony at trial corroborated the statements in the affidavit.

### B. Sixth Amendment

■ The fact that there was no violation of the Speedy Trial Act in this case does not preclude us from finding a violation of the Sixth Amendment right to a speedy trial. The Sixth Amendment right to a speedy trial, similar to rights arising from the Speedy Trial Act, does not arise until charges are pending. Periods of delay prior to arrest are irrelevant to Sixth Amendment analysis. *United States v. MacDonald,* 456 U.S. 1, 7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982). Similarly, any delay after the government dismisses charges

against a defendant and before charges are refiled does not implicate a defendant's speedy trial rights. *Id.* Thus, for purposes of Sixth Amendment analysis, the delay prior to Koller's second arrest on December 18, 1989, is irrelevant. The initiation of charges inevitably has adverse effects upon the accused, but once the charges are dismissed, the accused is "legally and constitutionally in the same posture as though no charges had been made." *MacDonald,* 456 U.S. at 10, 102 S.Ct. at 1503. We, therefore, address Koller's Sixth Amendment argument only with regard to the delay from the second arrest to the trial, eight and one-half months.[2]

■ The U.S. Supreme Court has identified four factors to be taken into account in determining whether the Sixth Amendment right to a speedy trial has been violated. Those factors are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant caused by the delay. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972). In setting out this test, the Court stated that it "regard[ed] none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533, 92 S.Ct. at 2193.

■ The first factor, length of delay, was identified by the Court as "to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. For example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 530, 102 S.Ct. at 2192. In a prosecution for attempted murder and armed robbery, we decided that a delay of 8 months was enough to warrant an in-

---

**2.** In *MacDonald,* the Court implied the possibility of considering delay between dismissal and indictment where the government dismissed and later reinstituted charges in order to intentionally evade the speedy trial right. *Mac-*

*Donald,* 456 U.S. at 10 n. 12, 102 S.Ct. at 1503 n. 12. In this case, however, the government clearly dismissed the charges because Koller was taken into state custody for violation of his parole.

quiry into the other three factors. *United States ex rel. Fitzgerald v. Jordan,* 747 F.2d 1120, 1127 (7th Cir.1984), *cert. denied,* 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985). A delay of eight and one-half months is enough to warrant further inquiry in this case.

■ The third factor, assertion of the speedy trial right, does not favor Koller. There was no clear assertion of a speedy trial right, other than Koller's opposition to the government's motions for continuances due to the unavailability of Ben–Hur. He did make a motion to dismiss for delay in prosecution 36 days after indictment, but this appears really to have been a claim of pre-indictment delay, which is not relevant to Sixth Amendment analysis. Koller could not be said to have vigorously pursued a speedy trial.

■ Moving on to the fourth factor, "[p]rejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. Th[e] Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired ... If witnesses die or disappear during a delay, the prejudice is obvious." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Koller did spend the entire eight and one-half months of delay in jail, but in *Barker* the Court found that ten months of incarceration prior to trial was not sufficient to rise to the level of serious prejudice. *Id.* at 534, 92 S.Ct. at 2194.

■ With respect to the impairment to his defense, the defendant cannot merely allege possible prejudice, he must show that his defense was impaired such that he suffered actual and substantial prejudice as a result of the delay. *United States v. Deleon,* 710 F.2d 1218, 1223 (7th Cir.1983); *See also, United States v. Ashford,* 924 F.2d 1416, 1421 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 98, 116 L.Ed.2d 69 (1991). Koller argues that he was prejudiced because two of his witnesses became unavailable due to the delay. Koller's son would have testified that the guns that formed the basis for the firearms posses-

sion charge (Count EIGHT) actually belonged to him and not to his father, but he died on August 28, 1990. Jeffrey Johnson, who would have provided alibi testimony on Counts THREE and FOUR, was stationed in Hawaii as a member of the U.S. Army and could not be contacted due to preparations for the Gulf War. Koller also asserts that the delay caused his witnesses' memories to fade, thus impairing his defense.

■ Koller's general allegation that his witnesses' memories faded during the delay does not rise to the level of specificity required to show actual prejudice. *United States v. Brock,* 782 F.2d 1442, 1447 (7th Cir.1986). On the other hand, Koller's allegation that two of his witnesses became unavailable is specific, but the unavailability had little effect at trial. Jeffrey Johnson's father, Mark Johnson, testified at trial to the same events to which Jeffrey was expected to testify. Mark Johnson testified that Koller arrived at his farm on November 18, 1987, and stayed there, helping him with chores, until November 29, 1987. Mark Johnson testified that Koller left the farm only briefly but was unaccompanied on some of those occasions. Counts THREE and FOUR alleged that Koller sold cocaine to Arlyn Ackley on two dates during the same time period. This testimony established a weak alibi at best. Jeffrey's testimony would have been purely cumulative, although arguably more credible because he was not a member of the Outlaws like his father. We conclude that Jeffrey's unavailability resulted in negligible, if any, actual prejudice, and Koller's failure to request a continuance based upon Jeffrey's unavailability, which was likely not permanent, also cuts against a finding of prejudice.

The defense did request a continuance due to the son's death. Koller's son had testified before the Grand Jury and the transcript of that testimony was available. Three other witnesses, Ronald Yenter, Nancy Shaw, and Lois Murray, testified that Koller's son won a gun at a West Allis tavern. Although these three witnesses' testimony was not particularly strong because they could not definitively identify the rifle, Koller's son, a known drug addict,

would not necessarily have been a more reliable or believable witness. In addition, Koller could have used his son's Grand Jury testimony at trial in place of live testimony but chose not to do so. Fed. R.Evid. 804(b)(1) (1990). The unavailability of Koller's son likely resulted in some prejudice, but it could not be characterized as substantial.

■ Factors one and four favor Koller but are not strong enough to outweigh the government's legitimate reason for delay under factor two. The reason for delay in this case was the unavailability of a key government witness, Shia Ben–Hur. As discussed above, Ben–Hur had suffered a heart attack and undergone triple-bypass open-heart surgery. The delay of five months for Ben–Hur's recovery was not particularly long. "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. Therefore, we hold that Koller's Sixth Amendment right to a speedy trial was not violated.

### C. Fifth Amendment

■ Koller argues that the delay denied him due process. The delay from commission of the criminal act to indictment is relevant to due process analysis. Although the various offenses are alleged to have occurred over a period of about one year, Koller makes no argument concerning the delay before the last offense, and concentrates on the fourteen months from November 2, 1988, to January 16, 1991. During most of this period he was in state custody. The government could have obtained an indictment and retained or obtained custody for trial, but elected not to do so.

■ Two different standards have developed in this circuit for establishing a violation of due process by delay. *United States v. Williams*, 738 F.2d 172, 175 (7th Cir.1984). One line of cases requires that the defendant first show actual and substantial prejudice from the delay and then the burden shifts to the government to show that the delay was necessary. The court must balance the prejudice from the delay against the asserted reasons for delay. *United States v. King*, 593 F.2d 269, 272 (7th Cir.1979); *United States v. Solomon*, 688 F.2d 1171, 1179 (7th Cir.1982). Starting in 1983, another line of cases states that the defendant bears the burden of proving both that "the delay caused actual and substantial prejudice to his or her fair trial rights and that the government delayed indictment for tactical advantage or some other impermissible reason." *United States v. Watkins*, 709 F.2d 475, 479 (7th Cir.1983); *United States v. Ashford*, 924 F.2d 1416, 1419–20 (7th Cir.1991); *United States v. Fuesting*, 845 F.2d 664, 669 (7th Cir.1988); *United States v. Antonino*, 830 F.2d 798, 804 (7th Cir.1987). Several decisions have pointed out the conflict but have not resolved it. *See e.g.*, *Williams*, 738 F.2d at 175 and *Brock*, 782 F.2d at 1443 n. 1. Because we conclude that the result would be the same under the *King* standard as under the *Watkins* standard, we do not resolve the conflict here.

Under either standard Koller has the burden to show actual and substantial prejudice from the delay. "The allegations of prejudice must be specific, concrete and supported by the evidence—vague, speculative, or conclusory allegations will not suffice." *United States v. Fuesting*, 845 F.2d 664, 669 (7th Cir.1988). Koller must point specifically to how he was prejudiced by the delay. Allegations that witnesses' memories have faded is not enough. *Brock*, 782 F.2d at 1444. The defendant must also allege more than that a particular witness is no longer available and that his testimony would have been favorable to the defense. *United States v. Brown*, 742 F.2d 359, 362 (7th Cir.1984). Koller has met the burden of specificity as to the counts where the missing witnesses could have helped. He has shown how two witnesses became unavailable due to the delay, and he has specifically described how their testimony could have helped him. As discussed above in the Sixth Amendment analysis, however, Koller has not shown that he was *substantially* prejudiced as to those counts by the unavailability of the two witnesses.

Koller also argues that the pre-indictment delay prejudiced him by preventing

him from serving the sentences on these convictions concurrently with his parole revocation sentence. His confinement on the parole revocation, however, was a result of his state conviction rather than a sentence for the conduct underlying this federal prosecution. Koller has no right to serve his sentences on these two different convictions, one state and one federal, concurrently, and thus, he suffered no prejudice.

The two standards differ as to the proof required of the reason for delay. In this case, the pre-indictment delay was caused by the government's decision to delay the filing of federal charges until Koller was released from state custody for probation revocation. Although the government was not compelled to delay the trial until Koller was released from state custody, its decision to dismiss the indictment and reindict Koller upon his release was not an impermissible course of action.[3] Awaiting his release from state custody was certainly a valid reason for delay rather than a pretext for the government to intentionally gain a tactical advantage over Koller. *See, United States v. Carmany*, 901 F.2d 76, 78 (7th Cir.1990) (awaiting the resolution of state proceedings is a valid reason for preindictment delay). The defendant has not proved that the government had an impermissible reason for the delay, and thus, under the *Watkins* standard the delay did not deny Koller due process. Likewise, under the *King* standard because the valid reason for the delay outweighs the less than substantial prejudice suffered by the defendant in this case we conclude that Koller was not denied due process.

### III. OUTRAGEOUS CONDUCT

The 500 gram transaction charged in Count SIX increased the possible penalty upon conviction. Koller argues that the "government's outrageous involvement in creating the offense for punishment purposes only" violated his due process rights. Appellant's Brief at 35.

Koller impliedly argues that the government created the offense in order to convict him of possession of a larger amount of cocaine and, thus, receive a longer sentence.[4]

For governmental conduct to constitute outrageous conduct which violates the due process clause, the conduct must be shocking to the universal concept of justice. *United States v. Miller*, 891 F.2d 1265, 1267 (7th Cir.1989). In this case, the government supplied cocaine to Ben–Hur, the defendant's supplier, for a transaction in an amount greater than any of the defendant's previous transactions with Ben–Hur. Ben–Hur suggested the transaction to Koller at the direction of the government. Koller had been buying cocaine from Ben–Hur for years and was clearly predisposed to commit the offense. The governmental conduct involved no more than a conventional sting operation and could not be characterized as shocking to the universal concept of justice.

The determination of what conduct is shocking to the universal concept of justice is essentially a judgment about whether the government has violated the community's moral standards. *Miller*, 891 F.2d at 1271 (Easterbrook, J., concurring). "[T]here is doubt as to the validity of the outrageous governmental conduct doctrine ... In any event we have never reversed a conviction on this ground." *United States v. White*, 950 F.2d 426, 431 (7th Cir.1991) (citations omitted); *See also, Hampton v. United States*, 425 U.S. 484, 490, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113 (1976) (remedy of criminal defendant for acts of government agents lies solely in entrapment defense). Because the governmental conduct here clearly does not meet the standard for outrageous conduct, we need not decide whether this defense continues to have any vitality in this circuit.

### IV. SENTENCING

Koller received sentences within the statutory range for his offenses. Un-

---

**3.** If the government had decided to indict Koller prior to his release from state custody and place him under detainer, Koller, of course, could have requested a final disposition of the charges against him and the government would be required to bring him to trial within 180 days of such request. 18 U.S.C. app. III § 2 (1988) (Interstate Agreements on Detainers Act).

**4.** We note that Koller does refer to this defense as "entrapment," but there was clear proof of predisposition.

der the Sentencing Guidelines, prior convictions were taken into account, and his sentences were greater than if he had not had those prior convictions. Koller contends that 21 U.S.C. § 851 (1990) applied and that prior convictions could not increase his sentence under the Guidelines because the government did not file an information alleging those prior convictions. Section 851 provides, "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless ... the United States attorney files an information."

That section (enacted long before the Guidelines) applies to additional penalties provided by a repeater statute over and above the maximum penalty prescribed by statute for a particular offense. It has no application to the effect of prior convictions in deciding the appropriate sentence within such maximum pursuant to the Guidelines. Several other circuits have held that § 851 does not apply to enhancements under the Sentencing Guidelines. *See, United States v. Sanchez,* 917 F.2d 607, 616 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1625, 113 L.Ed.2d 722 (1991); *United States v. Whitaker,* 938 F.2d 1551, 1552 (2d Cir. 1991); *United States v. Marshall,* 910 F.2d 1241, 1244–45 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 976, 112 L.Ed.2d 1061 (1991); *United States v. Wallace,* 895 F.2d 487, 489–90 (8th Cir.1990); *United States v. Novey,* 922 F.2d 624, 627–29 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991); *But see, United States v. Williams,* 899 F.2d 1526, 1529 (6th Cir.1990).

▇ Koller also argues that the district judge erred in not giving him credit for time served prior to sentencing pursuant to 18 U.S.C. § 3585(b). Section 3585 provides:

(b) Credit for prior custody—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed

18 U.S.C. § 3585(b)(1) (1990). A previous provision, repealed upon enactment of this section, gave the responsibility for making these calculations to the Attorney General. 18 U.S.C. § 3568 (1983). We previously held that in enacting § 3585 Congress did not intend to relieve the Attorney General of this responsibility. *United States v. Brumbaugh,* 909 F.2d 289 (7th Cir.1990). Therefore, as under repealed § 3568, Koller must first seek § 3585 credit from the Attorney General, and the district court has jurisdiction only to review the Attorney General's decision pursuant to 28 U.S.C. § 2241. *See, United States v. Hornick,* 815 F.2d 1156, 1160 (7th Cir.1987).

## V. CONCLUSION

The convictions and sentences are AFFIRMED.

## ORDER

April 22, 1992.

This case is before the court on a petition for rehearing and suggestion for rehearing *in banc.*

Defendant argues in his petition for rehearing that his arrest occurred December 15, 1987 when the state authority having him in custody was notified of the federal warrant, and that the thirty day period allowed by the Speedy Trial Act, 18 U.S.C. § 3161 ran from that date. The federal authorities did not take him into custody until December 18, the date of arrest on which we relied. The indictment was returned within thirty days of December 18, but not December 15.

Defendant did not make this argument until his reply brief, and thus waived it. *Egert v. Connecticut General Life Ins. Co.,* 900 F.2d 1032, 1035 (7th Cir.1990).

All of the judges on the original panel have voted to DENY the petition for rehearing, and no judge in regular active service has requested a vote on the suggestion for rehearing *in banc.* Accordingly,

IT IS ORDERED that the aforesaid petition for rehearing be, and the same is hereby, DENIED.