9 F.3d 113
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joaquin AGUILAR, Defendant-Appellant.
 No. 92-3623.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 22, 1993.*
Decided Oct. 14, 1993.
 
 Before BAUER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Joaquin Aguilar appeals his conviction of conspiracy to distribute cocaine, 21 U.S.C. Sec. 846, and possession with intent to distribute cocaine, 21 U.S.C. Sec. 841(a)(1), claiming that he was denied his Sixth Amendment right to a speedy trial because of the government's five-year delay in bringing him to trial. We affirm.
 
 I. BACKGROUND
 
 2
 On June 1, 1987, the United States Attorneys Office filed a criminal complaint in Milwaukee, Wisconsin, charging Joaquin Aguilar, Bobbi Aguilar and Antonio Hernandez with conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846. The complaint was based on the affidavit of a government agent which stated that Aguilar and Bobbi Aguilar discussed a sale of cocaine with a confidential informant in Green Bay, Wisconsin, that Hernandez subsequently delivered ten ounces of cocaine to the informant on March 8, 1987, and that the informant then mailed a $5,000 cashier's check in payment for the cocaine to Aguilar in Miami, Florida. Arrest warrants for Aguilar, Bobbi Aguilar and Hernandez were issued on June 1, 1987. Aguilar was arrested in Miami, Florida, and made his initial appearance before a Magistrate Judge in the Eastern District of Wisconsin on June 17, 1987. On June 30, 1987, the United States filed a motion to dismiss without prejudice the charges against Aguilar and his co-defendants. The government's motion was granted and the complaint was dismissed the following day.
 
 
 3
 On September 6, 1989, a federal grand jury returned a four-count indictment against Aguilar, Barbara Aguilar (a/k/a "Bobbi"), Antonio Hernandez and three other co-defendants, charging them with conspiring to distribute cocaine from January, 1980 through June, 1987 in Green Bay, Wisconsin, in violation of 21 U.S.C. Secs. 841(a)(1) and 846, and 18 U.S.C. Sec. 2. The allegations of Count IV of the indictment essentially mirrored those of the earlier criminal complaint that had been dismissed without prejudice in 1987. The record is silent concerning what steps, if any, the government took to apprehend Aguilar after the return of the September 2, 1989 indictment. On the evening of December 17, 1991, following an anonymous tip, four Chicago police officers observed Aguilar attempting to enter an apartment in Uptown. He appeared to have a gun in his waistband and was carrying a bag. Aguilar was searched, and was found to be carrying two loaded handguns, 143 grams of cocaine, and a scale. Aguilar was placed under arrest, and was later turned over to federal authorities in Milwaukee.
 
 
 4
 Aguilar's trial on the present indictment began on July 27, 1992. Aguilar's first court-appointed attorney, who later withdrew, did not move to dismiss the indictment on Sixth Amendment speedy trial grounds. After trial began, outside the jury's presence, Aguilar's new attorney raised the issue of Aguilar's right to a speedy trial, disputing the government's contention that Aguilar had been a fugitive from justice. He insisted that if the government had endeavored to prosecute Aguilar on a timely basis, it would have found him openly living in Miami, Florida and conducting a legitimate business there. Aguilar's attorney also claimed that the government had had all the information it needed to prosecute Aguilar in 1987, but did not do so in order to gain a tactical advantage, a position the government strongly disputed. The district court instructed the jury to ignore any reference to Aguilar's alleged fugitive status in its consideration of the charges against him. The jury returned a verdict of guilty on three of the four counts, including Count IV, which had been the subject of the 1987 criminal complaint. Aguilar was sentenced to fifteen years imprisonment and four years of supervised release. This timely appeal followed.
 
 II. ANALYSIS
 
 5
 The Sixth Amendment right of the accused to a speedy trial has no application prior to an "arrest, indictment, or other official accusation." Doggett v. United States, 112 S.Ct. 2686, 2692 (1992). The Supreme Court has defined "official accusation" narrowly, as embracing only a formal indictment or information. United States v. Lovasco, 431 U.S. 783, 788 (1977); United States v. Marion, 404 U.S. 307, 320 (1971); see also Pharm v. Hatcher, 984 F.2d 783, 785 (7th Cir.1993). Although a delay prior to arrest or formal accusation may give rise to a Fifth Amendment due process claim, it does not trigger the protection of the Sixth Amendment Speedy Trial Clause. United States v. MacDonald, 456 U.S. 1, 7 (1982); see Lovasco, 431 U.S. at 790; United States v. Anagnostou, 974 F.2d 939, 942 n. 1 (7th Cir.1992), cert. denied, 113 S.Ct. 1943 (1993); United States v. Koller, 956 F.2d 1408, 1413 (7th Cir.1992). Similarly, an undue delay after charges are formally dismissed but before they are refiled may violate a defendant's due process rights, MacDonald, 456 U.S. at 7, but does not, in general, implicate the defendant's right to a speedy trial. See id. at 7, 8-9; Anagnostou, 974 F.2d at 942 n. 1; Koller, 956 F.2d at 1413; United States v. Ashford, 924 F.2d 1416, 1419 (7th Cir.), cert. denied, 112 S.Ct. 98 (1991); United States v. Antonino, 830 F.2d 798, 804 (7th Cir.1987).
 
 
 6
 To determine whether a defendant's Sixth Amendment right to a speedy trial has been violated, courts consider four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant caused by the delay. Doggett, 112 S.Ct. at 2690; Barker v. Wingo, 407 U.S. 514, 530 (1972); Koller, 956 F.2d at 1413. None of these factors is alone dispositive, but must be considered in light of all the relevant facts and circumstances of the case. Barker, 407 U.S. at 533. Moreover, where an extraordinary delay between indictment and arrest is brought about by the government's negligence, affirmative proof of the fourth Barker factor, particularized prejudice, is not necessary. Doggett, 112 S.Ct. at 2692, 2693-94 (where six years of an eight and one-half year lapse between indictment and arrest were directly attributable to the government's inexcusable oversights, actual prejudice was presumed); see also Anagnostou, 974 F.2d at 942 n. 1.
 
 
 7
 In 1987, Aguilar was arrested, then released, on a criminal complaint which charged him with the same offense as appeared in Count IV of the present indictment. That complaint was dismissed on July 1, 1987. Contrary to Aguilar's assertions, the period between Aguilar's first arrest and the return of the present indictment is not relevant for purposes of our Sixth Amendment analysis. See MacDonald, 456 U.S. at 7, 8-9; Koller, 956 F.2d at 1413; Ashford, 924 F.2d at 1419. Aguilar's right to a speedy trial therefore attached on September 6, 1989, when the present indictment was returned.[1] See United States v. Otero, 848 F.2d 835, 839-40 (7th Cir.1988) (citing Marion, 404 U.S. at 320).
 
 
 8
 Considering the first factor, we note that a delay of nearly three years between indictment and trial is sufficient to trigger a speedy trial claim analysis. See, e.g., Doggett, 112 S.Ct. at 2690-91 & n. 1 (delay of one year or more is generally sufficient to merit further inquiry). With respect to the second factor, the reason for the delay, the government asserts that it did not know where Aguilar was during that period, and asks us to infer from the circumstances of his 1991 arrest that he was a fugitive evading arrest. The government also contends that in light of the circumstances of that arrest, Aguilar should not be permitted to invoke the rule of Doggett, and thus dispense with proof of the fourth Baker factor, actual prejudice due to the delay. Moreover, because Aguilar never made a formal pretrial motion asserting his right to a speedy trial within the time period allotted for pretrial motions, and did not attempt to assert that right at any time before the start of trial, the third factor cannot be weighed in his favor. See Baker, 407 U.S. at 527-29, 531-32; Koller, 956 F.2d at 1414 (no clear assertion of speedy trial right); Otero, 848 F.2d at 840-41 (defendant asserted his speedy trial right on the morning of trial, fourteen days after pretrial motions were due).
 
 
 9
 Aguilar's principal argument on appeal is that the rule of Doggett should apply to his case. Aguilar contends that he was openly living and working in Miami, Florida when the present indictment was returned, and that the government nevertheless failed to apprehend him and bring him to trial for a period of nearly three years. Thus, according to Aguilar, the government's negligence in bringing him to trial must be viewed as presumptively prejudicial to his defense.
 
 
 10
 Although the record is undeveloped concerning what steps, if any, the government took to bring Aguilar to justice, Aguilar's contention that the government is responsible for the delay between the return of the present indictment and the start of his trial is belied by the circumstances of his December 17, 1991 arrest. On that date, Chicago police officers observed Aguilar using a key to enter an apartment at 941 West Agatite in Chicago, Illinois. When he was arrested, he was carrying two loaded firearms, 143 grams of cocaine, and a scale. These facts are inconsistent with Aguilar's claim that he, like the defendant in Doggett, had been peaceably living and working in Miami, Florida since the time of his first arrest in 1987.[2] The circumstances under which Aguilar came to the attention of authorities lend strong support to the government's contention that Aguilar was a fugitive at large from the time of the return of the present indictment in 1989 until his arrest by Chicago police in 1991. Because the second and fourth Barker factors thus weigh heavily against Aguilar, his claim that he was denied his Sixth Amendment right to a speedy trial must be rejected.[3]
 
 CONCLUSION
 Aguilar's conviction is therefore
 
 11
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Appellant has filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 Aguilar claims that although the government had all the information it needed to prosecute him in 1987, it deliberately delayed prosecution for tactical reasons. In MacDonald, the Supreme Court left open the possibility of considering the delay between dismissal and reindictment as relevant to a Sixth Amendment speedy trial inquiry where the government acted in bad faith to evade the speedy trial right. MacDonald, 456 U.S. at 7, 10-11 n. 12; see also Koller, 956 F.2d at 1413. In this case, however, Aguilar fails to bring forward any evidence that would substantiate his bare allegation of bad faith. The record is undeveloped on this point at least in part because Aguilar did not make a timely motion asserting his right to a speedy trial and requesting an evidentiary hearing
 
 
 [2]
 The defendant in Doggett "married, earned a college degree, found a steady job as a computer operations manager, lived openly under his own name, and stayed within the law" for a period of six years. 112 S.Ct. at 2689. A "simple credit check" on persons with outstanding arrest warrants immediately revealed his whereabouts to federal authorities and led to his arrest. Id. at 2689-90. The record thus clearly established that "Doggett could not be faulted for any delay in asserting his right to a speedy trial." Id. at 2690
 
 
 [3]
 Because Aguilar does not raise a Fifth Amendment denial of due process claim, and indeed insists that his claim is properly characterized as arising under the Sixth Amendment Speedy Trial Clause, we need not consider whether the preindictment delay implicated Aguilar's due process rights. In any case, Aguilar has not attempted to show actual and substantial prejudice attributable to this delay, as would be necessary to prevail on a Fifth Amendment due process claim. See, e.g., Wilson v. McCaughtry, 994 F.2d 1228, 1233 (7th Cir.1993)