89 F.3d 839
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
McArthur BENFORD, Defendant-Appellant.
 No. 95-2173.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 25, 1996.
Decided June 26, 1996.
 
 Before CUMMINGS, PELL and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 McArthur Benford pleaded guilty to two counts of distribution of crack cocaine, 21 U.S.C. § 841(a)(1). The district court sentenced Benford to two concurrent terms of 188-months' imprisonment, to be followed by two concurrent four-year terms of supervised release. Benford's counsel filed a timely notice of appeal. On appeal, Benford's counsel also filed a motion to withdraw and an Anders brief in which he stated his belief that an appeal would be frivolous. Anders v. California, 386 U.S. 738 (1967); United States v. Edwards, 777 F.2d 364 (7th Cir.1985). Pursuant to Circuit Rule 51(a), Benford was informed of his right to respond. Benford filed a response to counsel's motion to withdraw and Anders brief.
 
 
 2
 This court will grant counsel's motion to withdraw only if it is convinced that the possible issues for appeal are "groundless in light of legal principles and decisions." United States v. Eggen, 984 F.2d 848, 850 (7th Cir.1993) (citing McCoy v. Court of Appeals, 486 U.S. 429, 436 (1988)). A review of the record reveals that there are no issues for appeal that can be considered non-frivolous.
 
 
 3
 On July 21, 1994, Benford was charged, in a three-count indictment, with distribution of 27 grams of crack cocaine (Count I), 21 U.S.C. § 841(a)(1); possession of a firearm while distributing drugs, 18 U.S.C. §§ 2 and 924(c) (Count II); and distribution of 27.5 grams of crack cocaine (Count III). Benford initially entered a plea of not guilty to all three counts, and filed a motion to suppress. After a hearing on the suppression motion, but before a ruling from the district court, Benford entered a plea of guilty to Counts I and III of the indictment. Benford, however, maintained his plea of not guilty to Count II, expressing his intent to proceed with his motion to suppress regarding Count II only. A plea colloquy was held on December 20, 1994, where Benford's plea was accepted. As a result of the plea, the prosecution dismissed Count II. Thereafter, Benford was sentenced on Counts I and III to two concurrent terms of 188-months' imprisonment, to be followed by two concurrent four-year terms of supervised release.
 
 I. Issues concerning the Guilty Plea
 
 4
 Having independently reviewed the transcript of the plea hearing, we conclude that any challenge to the voluntariness of the guilty plea would be groundless and therefore frivolous.
 
 
 5
 Benford's guilty plea satisfies the requirements of Federal Rule of Criminal Procedure 11. A plea hearing was held on December 20, 1994. The district court first warned Benford that if he gave any false answers at the guilty plea hearing, they could later be used against him in another prosecution for perjury. (Transcript of Guilty Plea Hearing at 2.) The district court then established that Benford was competent. Id. at 3-4. The district court reminded Benford that its ruling on his motion to suppress was still pending and that, after hearing all of the evidence on the motion, it might be granted or it might be denied. Id. at 4. The district court informed Benford that if the motion were granted, it might help his position at trial. Id. The court made certain that Benford understood that, by pleading guilty to Counts I and III, he was waiving any right to suppression he might have regarding those counts. Id.
 
 
 6
 Benford stated that he had a chance to read the indictment and discuss the case with his attorney. Id. at 7. He was asked if he was satisfied with the performance of his attorney and he stated that he was. Id. at 7. The district court informed Benford that he was pleading guilty to Counts I and III and that there was no plea agreement with the government. Id. The court next ensured that no one forced or compelled Benford to plead guilty. Id.
 
 
 7
 Benford was informed that on both counts there was a mandatory minimum sentence of five-years' imprisonment, a maximum sentence of forty years, and a four-year term of supervised release. Id. at 8. Benford was also told that he would not be entitled to either probation or parole. Id. at 8, 10. The court informed Benford that the applicable guideline range would not be determined until after the preparation of a presentence investigation report, and that both he and the government would be afforded an opportunity to make objections to the report. Id. at 9. The court also informed Benford that the sentencing guidelines were applicable at sentencing and that under certain circumstances, the court might impose a sentence greater or less than the sentences provided for in the applicable guideline range. Id. Benford was instructed that he had the right to plead not guilty to all counts, that he had a right to a trial by jury, that he had a right to assistance of counsel, that he had a right to bring in witnesses to testify on his own behalf and a right to cross-examine witnesses presented by the government, and that he had a right against self-incrimination. Id. at 10. Benford was then told that by pleading guilty, he was waiving these rights. Id. at 11. The district then informed Benford that he was pleading guilty to two counts of distribution of crack cocaine. Id. at 11. The government then recited the factual basis of the plea, stating that Benford sold 27 grams of crack cocaine on June 20, 1994 (Count I), and 27.5 grams of crack cocaine on June 27, 1994 (Count III). Id. at 12-13. With the exception of the allegation that Benford was in possession of a firearm during the course of his drug distribution scheme (the basis for Count II, which was dismissed), Benford agreed with the factual basis of the plea. Id. at 13-14. The district court then accepted the plea. Id. at 14-15.
 
 
 8
 The district court fully complied with Rule 11. Any claim challenging the voluntariness of the guilty plea would be groundless.
 
 II. Sentencing Issues
 
 9
 Appellate review of a sentence imposed under the guidelines is limited to cases where the sentence is (1) in violation of the law, (2) a result of the incorrect application of the guidelines, (3) greater than the sentence specified in the applicable guideline range, or (4) plainly unreasonable and imposed for an offense for which there is no guideline. 18 U.S.C. § 3742(a)(1)-(4). Hence, "[a]bsent an error of law or a misapplication of the guidelines, this court lacks jurisdiction to review sentences within the appropriate guidelines range." United States v. Solis, 923 F.2d 548, 551 (7th Cir.1991). To establish whether Benford's sentence meets any of the criteria of review, we must first decide whether he was sentenced in compliance with the United States Sentencing Guidelines.
 
 A. Application of Sentencing Guidelines
 
 10
 Our independent review reveals that the guidelines were correctly applied. Benford pleaded guilty to distribution of crack cocaine on two occasions (Counts I and III), in violation of 21 U.S.C. § 841(a)(1). Pursuant to U.S.S.G. § 3D1.2, Counts I and III were grouped together. The applicable base offense level for both counts was determined to be 31.
 
 
 11
 The district court found that the amount of crack cocaine constituting Benford's relevant conduct for each count was 125.3 grams. In his plea, Benford admitted to two sales of crack cocaine totalling 54.5 grams. Additionally, in a prior statement, Benford admitted to selling one "eight ball" a week for five months, which would equal 70.8 grams of crack cocaine. This criminal activity was found to be within the same course of conduct as the two drug sales constituting the offenses of conviction. Benford did not dispute this relevant conduct calculation. Since Benford's relevant conduct involved at least 50 but less than 150 grams of crack cocaine, the applicable base offense level was 32, U.S.S.G. § 2D1.1. The district court found that Benford was in possession of a firearm within the course of conduct of his drug distribution scheme. Accordingly, he was assessed a 2-point increase for each count under U.S.S.G. § 2D1.1(b)(1). However, as a result of his acceptance of responsibility, Benford received an aggregate 3-point reduction pursuant to U.S.S.G. § 3E1.1(a) and (b)(2).
 
 
 12
 Hence Benford's total offense level for both counts was 31 points. The presentence investigation report ("PSR") calculated Benford's total criminal history points to be 9, resulting in a criminal history category of IV. Based on an offense level of 31 and a criminal history category of IV, Benford's applicable guideline range for each count was 151 to 188 months. Benford was sentenced to two concurrent terms of 188 months' imprisonment, U.S.S.G. § 5G1.2(c).
 
 
 13
 As counsel notes in his Anders brief, Benford might challenge the district court's decision not to sentence him at the low end of the applicable guideline range. Such a claim, however, would be frivolous. The district court had absolute discretion to decide where, within the applicable sentencing range, Benford should be sentenced.
 
 
 14
 Benford argues that his criminal history category was incorrectly calculated. Specifically, he maintains that a prior burglary conviction, for which he received 3 criminal history points, occurred more than 15 years prior to the commencement of the offenses of conviction and therefore, as provided by U.S.S.G. § 4A1.2(e), should not have been counted. The offenses of conviction occurred on June 20 and 27 of 1994. Benford was sentenced to three years' imprisonment on the prior burglary conviction on December 6, 1979. This prior conviction occurred within 15 years of the commencement of the instant offenses. Accordingly, it was properly counted in calculating Benford's criminal history category. See U.S.S.G. § 4A1.2(e)(1).
 
 
 15
 Benford contends that the district court erred in enhancing his sentence under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm in connection with his drug related activity. At the sentencing hearing, the government presented Detective Cory Harris of the East St. Louis Police Department, who testified that he witnessed Benford in possession of a firearm during the June 20, 1994 sale of crack cocaine. This testimony provided adequate grounds for the enhancement. Since both the June 20 and June 27 drug sales were part of the same course of conduct, and Benford's possession of the firearm on June 20 was in furtherance of that course of conduct, the § 2D1.1(b)(1) enhancement was applicable to the calculation of Benford's offense level for both counts. See United States v. Mumford, 25 F.3d 461, 468-69 (7th Cir.1994).
 
 
 16
 Benford argues, however, that since the district court should have granted his motion to suppress, the § 2D1.1(b)(1) enhancement was in error. We disagree. "The exclusionary rule is generally inapplicable during sentencing." Del Vecchio v. Illinois Department of Corrections, 31 F.3d 1363, 1388 (7th Cir.1994). In any event, Benford's motion to suppress concerned his confession and items seized from his car during his arrest. The enhancement for possession of a firearm was based on evidence not at issue in Benford's motion to suppress--it was based on the independent observations of Detective Harris. Any challenge to the § 2D1.1(b)(1) enhancement is without merit.
 
 
 17
 Finally, Benford argues that the government failed to file an information, as required by 21 U.S.C. § 851(a)(1), listing any prior convictions which might be used to enhance his sentence. Section 851(a)(1), however, applies only to prior convictions which increase the mandatory minimum and maximum sentence. It "has no application to the effect of prior convictions in deciding the appropriate sentence within ... the guidelines.' " United States v. Robinson, 14 F.3d 1200, 1206 (7th Cir.1994) (quoting United States v. Koller, 956 F.2d 1408, 1417 (7th Cir.1992)). Here, Benford's prior convictions were used only to calculate his criminal history category. Accordingly, no information under § 851(a)(1) was required.
 
 
 18
 Clearly, any challenge to district court's application of the guidelines at sentencing would be frivolous.
 
 B. Compliance with Rule 32
 
 19
 We must also determine whether Benford was sentenced in compliance with Federal Rule of Criminal Procedure 32. Rule 32(a) requires that the district court timely provide the defendant with a copy of the PSR and afford counsel an opportunity to state objections to the PSR and comment on matters relating to the sentence. Both Benford and his attorney had an opportunity to read the sentencing report before sentencing. (Transcript of Sentencing Hearing, April 28, 1995, at 2.) Counsel reviewed the report with Benford. Id. Counsel and Benford agreed, for the most part, with the factual findings in the PSR. However, counsel made two objections, arguing that: (1) Benford should have been given a credit for acceptance of responsibility, U.S.S.G. § 3E1.1(a) and (b)(2); and (2) the 2-point enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1) was in error. Id. at 2-4. The district court ultimately gave Benford a three-point reduction for his acceptance of responsibility. The § 2D1.1(b)(1) enhancement was proper. Finally, Benford was advised of his right to appeal his sentence. Transcript of Sentencing Hearing at 30. Accordingly, any claim based on a violation of Rule 32 would be groundless.
 
 
 20
 For above-stated reasons, counsel's motion to withdraw is GRANTED and Benford's appeal is DISMISSED.[1]
 
 
 
 [1]
 On June 18, 1996, Benford filed a motion requesting new counsel, alleging inadequate representation by his present attorney because of an "escalating" conflict of interest. There are no non-frivolous issues for appeal. Moreover, there is nothing in the record demonstrating any conflict of interest regarding Benford's appellate counsel. Accordingly, this motion is denied