134 F.3d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jody L. JAMES, Defendant-Appellant.
 No. 97-2382.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 17, 1997.
Decided Jan. 15, 1998.
 
 Before CUMMINGS, ESCHBACH, and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 Jody L. James plead guilty to the offenses of "kidnapping" in violation of 18 U.S.C. § 1201(a)(1); "Use of a Firearm During a Crime of Violence" in violation of 18 U.S.C. § 924(c); and "Possession of a firearm which has been shipped in interstate commerce" in violation of 18 U.S.C. § 922(g)(1), and was sentenced to 240 months. James appeals his sentence, arguing that he was denied the effective assistance of counsel in violation of the Sixth Amendment and his right to a speedy trial in violation of the Constitution and the Speedy Trial Act, 18 U.S.C. § 3161.
 
 
 2
 James and Dorothy Quillen lived together briefly in Fort Wayne, Indiana. After a few months, Quillen took her two children and moved to her father's home in Sullivan, Indiana. However, their relationship continued. On September 20, 1989, Quillen was at her father's mobile home, when James telephoned and asked to speak to Quillen. He was told no. Later, James drove to Sullivan and asked to speak with Quillen. James was again told that Quillen did not wish to speak with him. He left the porch of the trailer, but returned with a gun and kidnapped Quillen.
 
 
 3
 Some of the individuals inside the trailer gave chase. At one point during the chase James fired shots at his pursuers, but did not hit anyone. James eventually drove into Illinois, where he was chased by the Illinois Police Department. During the chase, James crashed his car but still managed to escape with Quillen.
 
 
 4
 The next morning, James entered another trailer and locked the occupants in a storage shed. He stole a truck, gun and a map from the trailer and eventually arrived in Florida where he was arrested by the FBI. After his arrest, James admitted that he gone to Quillen's trailer with a gun after one of the occupants had insulted him over the telephone. He admitted to wanting to scare Quillen's friends because they were racially demeaning to him. He admitted that he "persuaded" Quillen to accompany him to Illinois and told of his episode at the second trailer. However, he informed the authorities that Quillen was with him in Florida of her own volition,
 
 
 5
 Following his arrest in Florida, he was returned to Indiana and Charles Russell was appointed to represent him. After 16 months of pre-trial confinement and one and a half days of trial, James plead guilty. During questioning by the court, James admitted to going over the Sentencing Guidelines with his brother, an attorney previously employed as a prosecutor, but never with Russell. James was found to be an Armed Career Criminal and received a total sentence of 240 months.
 
 
 6
 We review James's ineffective assistance of counsel claim under the two-part test established in Strickland v. Washington, 466 U.S. 668 (1984), and applied to a plea of guilty in Hill v. Lockhart, 474 U.S. 52, 58-61 (1985). See United States v. Jackson, 93 F.3d 335, 337 (7th Cir.1996). "Our review of counsel's performance must be highly deferential, and we must avoid the temptation to second-guess counsel." Toro v. Fairman, 940 F.2d 1065, 1067 (7th Cir.1991), cert. denied, 505 U.S. 1223 (1992).
 
 
 7
 We review James's Speedy Trial Act claim for plain error because it was not raised at the trial level, see United States v. Baker, 40 F.3d 154, 159 (7th Cir.1994), cert. denied, 514 U.S. 1028 (1995), but we review his Constitutional claim to a speedy trial under Doggett v. United States, 112 S. Ct 2686 (1992).
 
 
 8
 Under the Strickland two-prong test, James must establish that his counsel's performance was objectively unreasonable and that counsel's conduct caused prejudice. See Jackson, 93 F.3d at 337. "In the case of a guilty plea, the second prong of the Strickland test requires the defendant to show that there is a reasonable probability that, but for counsel's errors, the defendant would have insisted on going to trial." Id. (Citing Hill, 474 U.S. at 59).
 
 
 9
 It is imperative that "[c]ounsel [ ] make a significant effort, based on reasonable investigation and logical argument, to mitigate his client's punishment." Patrasso v. Nelson, 121 F.3d 297, 303-04 (7th Cir.1997) (quoting Eddmonds v. Peters, 93 F.3d 1307, 1319 (7th Cir.1996, cert. denied, 117 S. Ct 1441 (1997)). In Patrasso, this court stated that, "The Sixth Amendment right to counsel, of course, guarantees more than just a warm body to stand next to the accused during critical stages of the proceedings; an accused is entitled to an attorney who plays a role necessary to ensure that the proceedings are fair." Id. at 304 (quoting United States ex rel. Thomas v. O'Leary, 856 F.2d 1011, 1015 (7th Cir.1988)).
 
 
 10
 James now points to Russell's alleged failure to read the amended version of the PSR prior to sentencing.[1] However, Russell had not received the amended version until the previous night and the court went over the differences between the two versions prior to beginning. Russell made numerous objections during sentencing, both concerning the PSR and the proceedings, and filed a competent brief on James's status as an Armed Career Criminal. Russell also attempted to mitigate James's punishment by placing witnesses, one of them an expert, on the stand, in an attempt to explain James's conduct. Russell made serious attempts to reduce his clients culpability before the eyes of the court and was much "more than a warm body" standing next to James.
 
 
 11
 James also alleges that Russell never questioned James regarding James's version of the incident. When James made the identical claim during sentencing, the judge displayed disbelief at the claim. It appears from the record and transcripts that such an allegation, if not false, is over-exaggerated. The court's questioning of Russell displays a basic understanding of the prior relationship between James and the victim, as do the various papers filed with the court. In fact, Russell, in an attempt to invoke the marriage privilege, petitioned the court for permission for a marriage ceremony between the defendant and the victim. No matter how unlikely the success of such a defense would have been, it is unlikely that Russell would have considered it without a basic understanding of the facts of the case and the prior relationship between James and the victim. Also, at the probable cause and detention hearing, Russell raised the issue of consent and referenced his understanding of the facts--presumably after a discussion with James.
 
 
 12
 In awarding Russell fees pursuant to his work on the case, the court noted that it appeared that Russell "spent considerable time educating himself with the general principles of criminal law on matters that he should have left law school with." Out of the $36,805.07 Russell claimed, he was given only $5,725.17. However, the court specifically stated that, "by this ruling, [the court] does not mean to infer that the attorney was either incompetent or otherwise unqualified to handle this matter." The court did not feel that Russell was incompetent or handled the case improperly. Rather, the court was merely unable to authorize some of the requested reimbursements.
 
 
 13
 Since James has not established that Russell's performance was objectively unreasonable, it is unnecessary to analyze the second prong of the Strickland test--that James would have gone to trial, instead of pleading guilty.
 
 
 14
 The Speedy Trial Act, 18 U.S.C. § 3161(c)(1), provides that an accused who pleads not guilty shall be brought to trial within 70 days unless certain excludable periods exist. James's Speedy Trial Act claim rests on the fact that the government was granted a four-month continuance because of the pregnancy of a material witness. James contends that while the witness's condition "probably justified" a continuance, "there is no reason to believe that a continuance of almost 5 months (to the end of October) was necessary or justified."
 
 
 15
 However, "a valid reason, such as a missing witness, should serve to justify appropriate delay." Barker v. Wingo, 407 U.S. 514, 531 (1972). The government, in support of its motion for a continuance, attached a letter from a doctor who claimed that the witness was due to deliver a child in July and "would not be available for testifying" until October. Such a delay is reasonable. See United States v. Koller, 956 F.2d 1408, 1415 (7th cir.1992) (hospitalization for five months of a key witness because of a heart attack is excusable delay). Other significant delays are attributable to James and therefore excluded from the 70-day computation. See Baker, 40 F.3d at 159; 18 U.S.C. § 3161(h)(1)(A). No plain error exists as to James's Speedy Trial Act claim.
 
 
 16
 To determine whether a defendant's Sixth Amendment right to a speedy trial has been violated, courts consider four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant caused by the delay. See Doggert v. United States, 112 S.Ct. 2686, 2690 (1992); Barker v. Wingo, 407 U.S. 514, 530 (1972). None of these factors is alone dispositive, but must be considered in light of all the relevant facts and circumstances of the case. See Barker, 407 U.S. at 533.
 
 
 17
 Considering the first factor, a delay of sixteen months between indictment and trial is sufficient to trigger a speedy trial claim analysis. See, e.g., Doggett, 112 S.Ct. at 2691 n. 1 (delay of one year or more is generally sufficient to merit further inquiry). With respect to the second factor, the reason for the delay, the analysis above shows that most of the delays were attributable to the defendant and the continuance granted to the government was excusable.
 
 
 18
 Moreover, because James never made a formal pretrial motion asserting his right to a speedy trial within the time period allotted for pretrial motions, and did not attempt to assert that right at any time before the start of trial, the third factor cannot be weighed in his favor. See Barker, 407 U.S. at 527-29, 531-32; Koller, 956 F.2d at 1414. Additionally, no evidence exists that the delay significantly prejudiced James. Because the balance of the Doggett factors weighs heavily against James, his claim that he was denied his Sixth Amendment right to a speedy trail is rejected.
 
 
 19
 The sentence imposed is therefore AFFIRMED.
 
 
 
 [1]
 There is no dispute that Russell read the original PSR and in fact filed objections to it