In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2040

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHNNY R. WHITE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04 CR 119—**J. P. Stadtmueller**, *Judge.*

ARGUED JANUARY 12, 2006—DECIDED APRIL 5, 2006

Before FLAUM, *Chief Judge*, and BAUER and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* Johnny White was convicted of armed robbery under 18 U.S.C. §§ 2113(a), 2113(d), and possession of a firearm in connection with that robbery under 18 U.S.C. § 924(c). He challenges his conviction, claiming an improper jury instruction, a speedy trial violation, and an erroneous evidentiary ruling; in addition he challenges his sentence. We affirm.

## I. Background

At 10:45 a.m. on January 9, 2004, a man wearing a ski mask and carrying a silver gun entered the State Finan-

cial Bank of Whitefish Bay, Wisconsin, and demanded money. After the tellers filled his plastic Aldi grocery bag with money, he left the bank, dropping money as he went. Responding to an armed robbery call, police officers began following a black vehicle with two occupants heading away from the bank. After a high-speed chase, the two men ran from the vehicle in different directions. The passenger was carrying a white and orange bag. The officers followed the driver, later identified as Michael Page, on foot and eventually apprehended him. Although unable to follow the passenger, the officers located the bag, which contained $8,826. Page identified White as the passenger.

White was arrested on April 14, appeared in federal court on April 30, and was indicted on May 18. Count One charged him with armed robbery, and Count Two charged him with use of a firearm during the robbery. The district court twice granted continuances in the case, given the uncertain state of sentencing law following *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004). He granted the first on July 20, at the government's request, over White's objection. He granted the second on September 17, at both parties' suggestion. White was incarcerated from his arrest until his trial commenced on January 18, 2005. He never moved to dismiss the charges on speedy trial grounds.

At trial, several witnesses testified for the defense. Nailah Gentry, White's eighteen-year-old niece, testified that she was home sick on January 9. According to Gentry, White arrived at her house "between 11:30, 12 o'clock." She also testified that White's friend, Isaac Sawyer, called the house asking for White, and that she handed the phone to White, but that she could not remember what time that occurred. On cross-examination, the prosecution elicited that on January 15, 2004, Gentry told FBI Special Agent Jeffrey Moore that White did not arrive home until 12:45 p.m. on January 9. Further, the prosecution produced Ameritech

phone records to impeach Gentry's testimony regarding White's whereabouts. Through questioning, the government suggested that Gentry, dialing from her home, paged White at his pager number at 12:36 p.m. on January 9. By agreement, a redacted copy of the phone records went into evidence as Exhibit 27.

Another defense witness, Isaac Sawyer, confirmed Gentry's recollection that he called White at the house that day. According to Sawyer, he called multiple times and spoke with White for approximately one minute "between 10:00 and 11:00." Samantha Rice, a private investigator, also testified for the defense. At the request of defense counsel, she rode a bus from the bank to White's home and determined that the distance was approximately fourteen miles. The prosecution impeached this testimony on cross-examination by demonstrating that Rice took a circuitous bus route.

When White proposed an alibi instruction based on the testimony of the defense witnesses, the district court denied it but agreed to provide the jury with a theory of defense instruction. The jury received that instruction together with multiple instructions clarifying the government's burden of proving beyond a reasonable doubt the elements of the charged offenses.

The jury convicted White of both charges. The presentence report (PSR) recommended an obstruction of justice enhancement and listed the amount of loss as $11,590.00. White objected to the former, but not the latter. On April 1, the district court sentenced White to consecutive terms of sixty-four months on Count One and eighty-four months on Count Two. The total sentence of 148 months was predicated on a base offense level of 20, with a two-level "financial institution" enhancement, a two-level "obstruction of justice" enhancement, and a one-level enhancement for amount of loss in excess of $10,000. White appealed.

## II. Discussion

White argues on appeal that the district court erred by: (1) denying his request for an alibi instruction; (2) granting continuances violative of his statutory and constitutional speedy trial rights; (3) admitting into evidence phone records that lacked foundation and had not been disclosed to the defense; and (4) imposing two enhancements at sentencing.

### A. Alibi Jury Instruction

As to the denial of the tendered alibi jury instruction, we review a district court's decision regarding jury instructions for an abuse of discretion. *United States v. Chavis*, 429 F.3d 662, 671 (7th Cir. 2005). A defendant is entitled to have the jury consider any theory of defense, including an alibi defense, "that is supported by law and that has some foundation in the evidence." *United States v. Carter*, 910 F.2d 1524, 1531 (7th Cir. 1990) (citing *United States v. Grimes*, 413 F.2d 1376, 1378 (7th Cir. 1969)).

White proposed the following alibi instruction:

> You have heard evidence that the defendant was not present at the time and place where the offense charged in the indictment is said to have been committed. The government must prove beyond a reasonable doubt the defendant's presence at the time and place of the offense.

The district court denied the request for an alibi instruction and provided the following theory of defense instruction instead: "The theory of the defense is that the defendant was not present at the time and place where the offenses charged in the indictment are alleged to have been committed."

An alibi is a "defense based on the physical impossibility of a defendant's guilt by placing the defendant in a

location other than the scene of the crime at the relevant time." Black's Law Dictionary 79 (8th ed. 2004). It is undisputed that the robbery occurred at about 10:45 a.m. on January 9; any alibi testimony would involve White's location at that time. Neither Gentry nor Sawyer provided such testimony.

Gentry testified that White was with her at home between 11:30 a.m. and 12:00 p.m. This testimony not only does not relate to the relevant time, but also was undermined by the cross-examination of Gentry, which established that on January 15 Gentry told Agent Moore that White did not come home until 12:45 p.m. on January 9. Gentry's testimony did not establish an alibi for White's location at 10:45 a.m.

Sawyer's testimony was of little help. When asked whether he called White at home that day, Sawyer responded that he spoke with him "between 10:00 and 11:00." He elaborated that his conversation with White was "very short," lasting only a minute. Gentry recalled their conversation, but not the time it occurred. The defense was not entitled to the alibi instruction and the district court did not err in declining to give it.

White argues that the instructions as given did not adequately guard against the possibility of jury misunderstanding—i.e., that the jury would think that his failure to prove an alibi amounted to evidence of guilt. In order to receive a new trial based on erroneous instructions, a defendant "must show both that the instructions did not adequately state the law and that the error was prejudicial to [him] because the jury was likely to be confused or misled." *United States v. Smith*, 415 F.3d 682, 688 (7th Cir. 2005) (quoting *Boyd v. Ill. State Police*, 384 F.3d 888, 894 (7th Cir. 2004)). In denying the alibi instruction, the district court stated that he would "be happy to tailor an instruction along the lines that [defense counsel] suggested, but it will

have to be cast as a theory of defense instruction," and later gave such an instruction.

Nor can he demonstrate that he was prejudiced by possible jury confusion. In our prejudice analysis, "we 'consider[ ] the instructions as a whole, along with all of the evidence and arguments,' to determine whether 'the jury was misinformed about the applicable law.'" *Smith*, 415 F.3d at 688 (quoting *Boyd*, 384 F.3d at 894). White argues that the jury should have been instructed that his presence at the scene was an element of the crime; it is self-evident that presence is a necessary predicate for commission of the charged acts. The jury was instructed repeatedly on the government's burden, first in general instructions on their duties, and second in instructions on the charged offenses. In the second part, the specific instruction read as follows: "The government has the burden of proving each of the essential elements of the crime charged in the indictment beyond a reasonable doubt." One element of Count One required the government to prove "beyond a reasonable doubt" that "the defendant took from the person or presence of another, money belonging to or in the custody or possession of State Financial Bank." It strains reason to argue, as White does, that the jury could have found him guilty on this charge without concluding that he was physically present at the scene. The same is true for Count Two, which required the government to prove "beyond a reasonable doubt" that White "used or carried a firearm during and in relation to" the crime alleged in Count One. Moreover, the first part of the instructions notified the jury that White was "not required to prove his innocence or to produce any evidence," thereby eliminating any possibility of jury confusion about the burden of proof.

A district court does not commit reversible error when it correctly instructs the jury on the presumption of innocence, the government's burden of proof, the elements of the offense (including the defendant's presence at the scene),

and the theory of defense. *See Carter*, 910 F.2d at 1531. These instructions sufficiently informed the jury of all that the government needed to prove. *See United States v. Manjarrez*, 258 F.3d 618, 626 (7th Cir. 2001) (holding that a defendant is not entitled to a specific instruction so long as, "considering the instructions as a whole, the jury was adequately instructed upon his theory of defense"). Because the jury is presumed to follow the instructions that they were given, we are confident that the instructions given were not erroneous. *Smith*, 415 F.3d at 688-89.

## B. Speedy Trial Rights

White next argues that the district court violated both his statutory and constitutional speedy trial rights. The two rights are related but distinct, so that a violation of one may be found without a violation of the other. *United States v. Koller*, 956 F.2d 1408, 1413 (7th Cir. 1992).

### 1. Speedy Trial Act

White contends that the district court abused its discretion under the Speedy Trial Act by delaying his straightforward armed robbery case because of the novel legal issues presented by *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004). A defendant must be brought to trial within seventy days of the date of the indictment's filing, or the date of the defendant's initial appearance before a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1). Certain periods between the triggering date and the commencement of trial are excluded from the seventy-day limit. 18 U.S.C. § 3161(h). The decision to grant a continuance, and the accompanying decision to exclude the delay under the Act, is addressed to the sound discretion of the district court. *United States v. Taylor*, 196 F.3d 854, 860 (7th Cir. 1999). We will not

reverse its decision unless "there is an abuse of discretion by the court and a showing of actual prejudice." *Id.* (quoting *United States v. Martin*, 7 F.3d 679, 683 (7th Cir. 1993)).

In this case, the government was required under § 3161(c)(1) to bring White to trial within seventy days of the first indictment on May 18, 2004, because he first appeared before a judge on April 14. *See United States v. Owokoniran*, 840 F.2d 373, 374 (7th Cir. 1987) (holding that the seventy-day limit "commences running with the indictment" where the defendant's initial appearance before a judicial officer occurs before indictment). White's trial commenced on January 18, 2005. The defense concedes that the periods from May 28 to June 17 and from July 9 to July 13 are excluded under § 3161(h)(1)(F). The government, in turn, concedes that the periods from July 3 to July 9, July 14 to July 19, August 11 to August 17, and August 25 to September 17 are non-excludable under the Act. The government thereby admits that forty-three days ran under the Act, but claims that the other periods of time challenged by White—June 18 to July 2, July 20 to August 10, August 18 to August 24, and September 18 to January 18—are excludable.

Although White contends that these periods are not properly excludable under the Act, he never presented a statutory speedy trial claim to the district court. The Act expressly provides that defendants waive their rights under the Act when they do not move to dismiss the indictment. *See* 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial . . . shall constitute waiver of the right to dismissal under this section."). Although a defendant's failure to move for dismissal has in the past been viewed as forfeiting the argument but allowing for plain error review, we have since recognized that the Act, by its express terms, characterizes a defendant's failure to move for dismissal as "a waiver—not a forfeiture—of his rights under the Act." *United States v. Morgan*, 384 F.3d

439, 443 (7th Cir. 2004); *contra United States v. Griffin*, 194 F.3d 808, 824 (7th Cir. 1999) (reviewing for plain error defendant's statutory speedy trial claim raised for the first time on appeal). Because White never moved to dismiss the indictment in district court, he waived his rights under the Act and we may not address his claim for the first time on appeal.

### 2. Sixth Amendment

White also asserts that the district court violated his constitutional right to a speedy trial. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial"). In considering a defendant's Sixth Amendment speedy trial challenge, we apply the following four-part test: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). A review of these factors does not support White's claim of a Sixth Amendment violation.

The length of time from accusation to trial is a triggering mechanism: without a delay that is presumptively prejudicial, we need not examine the other factors. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The constitutional right attaches only after an arrest, an indictment, or some other form of official accusation. *United States v. Souffront*, 338 F.3d 809, 835 (7th Cir. 2003) (citing *Doggett*, 505 U.S. at 662). As a general matter, courts have found delays approaching one year to be presumptively prejudicial. *United States v. Ward*, 211 F.3d 356, 361 (7th Cir. 2000) (citing *Doggett*, 505 U.S. at 651). The length of delay necessary to trigger a more thorough analysis, however, "is necessarily dependent upon the peculiar circumstances of the case."

*Barker*, 407 U.S. at 530-31. In this case, officers arrested White on April 14, 2004, and the trial commenced on January 18, 2005. The length of delay, approximately nine months, is within the range that we have found long enough to warrant a more searching analysis. *See, e.g.*, *United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1127 (7th Cir. 1984) (finding that a pretrial delay of approximately eight months was presumptively prejudicial); *cf. Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (finding that a pretrial delay of approximately eight months in a robbery case did not constitute presumptive prejudice). Deciding that a delay is presumptively prejudicial requires us next to "consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652. Because the delay in this case was barely long enough to constitute presumptive prejudice, its length beyond that point was not excessive.

The second factor, whether the delay was the fault of the government or the defendant, is effectively neutral. The cause of delay was the novel legal issue involving anticipated changes to federal sentencing laws under *Blakely*, 542 U.S. 296, for which neither party properly deserves blame. The district court granted two 18 U.S.C. § 3161(h)(8)(B)(ii) continuances, the first on July 20 and the second on September 17. We consider the second continuance first. When the judge on September 17 opted to "adopt" the January 18 trial date suggested by the parties, defense counsel stated, "I don't have any quarrel." Because White thereby acceded to the second continuance, we need not assign blame to the government for the delay it produced. *See United States v. Rothrock*, 20 F.3d 709, 711 (7th Cir. 1994) (holding that defendant who joined in government's request for continuance under § 3161(h)(8)(A) cannot count the time for speedy trial purposes).

Although White objected to the first continuance, granted on July 20, the court based its ruling on the "considerable angst in terms of what is required in terms of proof, both at trial and sentencing" caused by *Blakely* and our subsequent *Booker* decision. The two opinions, decided June 24 and July 9, respectively, occurred within the few weeks before the status hearing, caused the district court understandable concern, and resulted in its prudent decision to "go slow and allow these cases to work their way through." Essentially, then, the reason for the delay was neutral—the uncertain application of *Blakely* to the U.S. Sentencing Guidelines. As we have held, however, "a more neutral reason [for delay] . . . should be weighted less heavily [than a deliberate government delay,] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *United States v. Jackson*, 542 F.2d 403, 407 (7th Cir. 1976). Nonetheless, we have in the past found no violation of the constitutional speedy trial right where "the bulk of the delay was caused by" a "difficult legal issue" that complicated the defendant's sentencing. *See Rothrock*, 20 F.3d at 712.

As for the third factor, White asserted his right at the July 20 pretrial conference by objecting to the first continuance. Because this assertion occurred after three months of the delay had occurred, this factor does not weigh strongly in his favor. *See Ward*, 211 F.3d at 361. We examine the fourth factor, prejudice, in light of the interests protected by the right: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that defense will be impaired." *Rothrock*, 20 F.3d at 712 (quoting *Barker*, 407 U.S. at 532). White claims prejudice based on his nine-month incarceration, but does not claim that the delay impaired his ability to present a defense. Significant pretrial incarceration may support a presumption of prejudice, but this prejudice

"unenhanced by tangible impairment of the defense func-
tion and unsupported by a better showing on the other
factors than was made here, does not alone make out a
deprivation of the right to [a] speedy trial." *Jackson*, 542
F.2d at 409 (quoting *United States v. DeTienne*, 468 F.2d
151, 158 (7th Cir. 1972)); *see also Koller*, 956 F.2d at 1414.

In short, then, the period of delay was not extreme, the
reason for the delay was a novel legal question, White
asserted the right three months after arrest, and he
suffered no demonstrable prejudice aside from incarcera-
tion. Weighing the four factors, we find that his Sixth
Amendment right to a speedy trial was not violated.

## C. Evidentiary Ruling

This Court will reverse a district court's evidentiary
ruling only upon a showing that the district court commit-
ted an abuse of discretion. *United States v. Briscoe*, 896
F.2d 1476, 1490 (7th Cir. 1990). White therefore faces a
heavy burden, for "a reviewing court gives special deference
to the evidentiary rulings of the trial court." *Id.* (quoting
*United States v. Shukitis*, 877 F.2d 1322, 1327 (7th Cir.
1989)).

According to White, the district court erred in admitting
purported Ameritech phone records into evidence be-
cause the prosecution, first, failed to disclose them under
Fed. R. Crim. P. 16(a)(1)(E), and, second, did not establish
a proper foundation under Fed. R. Evid. 803(6), the busi-
ness record exception to the hearsay rule. During cross-
examination, attorneys are permitted to address "matters
affecting the credibility of the witness." Fed. R. Evid. 611(b).
During its cross-examination of Gentry, the prosecution
attempted to impeach her testimony that White arrived at
her home sometime between 11:30 a.m. and 12:00 p.m. on
January 9. The prosecution confronted Gentry with phone
records showing that she had paged White from her home

phone at 12:36 p.m. that day, well after she testified that he had already arrived home. The prosecution's use of the records constituted a proper impeachment technique, meant "to suggest that the witness may be mistaken or inconsistent in his testimony and therefore is not a credible witness." *United States v. Phillips*, 914 F.2d 835, 839 (7th Cir. 1990).

Although White argues that it was error to admit the records into evidence, he waived this argument by agreeing to the admission into evidence of Exhibit 27, a redacted copy of them. Waiver occurs when a defendant intentionally relinquishes a known right. *United States v. Murry*, 395 F.3d 712, 717 (7th Cir. 2005). During Gentry's cross-examination, defense counsel initially raised objections regarding the phone records, thus indicating his knowledge of the right. His later decision to allow Exhibit 27 into evidence without objection, however, served as a repudiation of that right. *See United States v. Redditt*, 381 F.3d 597, 602 (7th Cir. 2004). Because defense counsel intentionally decided not to object to Exhibit 27's admission, White has waived any challenge on appeal. *See id.*

## D. Sentencing

White's conviction was classified at a base offense level of 20 under U.S.S.G. § 2B3.1(a). The district court then imposed a two-level enhancement under U.S.S.G. § 2B3.1(b)(1) because the property of a financial institution was the object of the offense. White does not contest either of these findings, but attributes error to the district court for: (1) imposing a one-level enhancement under U.S.S.G. § 2B3.1(b)(7)(B) because the bank's loss exceeded $10,000; and (2) imposing a two-level enhancement under U.S.S.G. § 3C1.2 because White fled from the scene.

He first argues that, because the jury did not determine the factual issues involved, the two enhancements violated the Sixth Amendment. Because White did not raise this constitutional issue at sentencing, we review for plain error. *United States v. Mykytiuk*, 415 F.3d 606, 607 (7th Cir. 2005). In *United States v. Booker*, the Supreme Court held that a Sixth Amendment problem arises where the sentence exceeds the statutory maximum for the charged crime or is imposed under a mandatory sentencing scheme, not that district courts may not conduct judicial fact-finding. 543 U.S. 220, 233-34 (2005). To the contrary, "*Booker* resolved the problem by making the guidelines advisory; judicial fact-finding in sentencing is acceptable because the guidelines are now nonbinding." *United States v. Robinson*, 435 F.3d 699, 701-02 (7th Cir. 2006). Because White's sentencing occurred on April 1, 2005, after *Booker*, the court treated the Guidelines as advisory and White's sentence is not constitutionally infirm.

Still, we review the district court's factual findings for clear error. *United States v. Arnaout*, 432 F.3d 994, 998 (7th Cir. 2005). Under this deferential standard of review, we will not overturn its findings unless we are firmly convinced that a mistake was made. *United States v. Bryant*, 420 F.3d 652, 656-57 (7th Cir. 2005). Upon review of the record, we cannot say that the district court's two findings here were clearly erroneous. Regarding the obstruction enhancement, it is true that White objected in response to the PSR. In ruling on the enhancement, though, the court considered and relied upon the trial testimony of both Page, the driver, and the officers who pursued him. The witnesses testified consistently regarding the high-speed chase, which "is clearly the sort of reckless behavior covered by § 3C1.2." *United States v. Giacometti*, 28 F.3d 698, 701 (7th Cir. 1994). Because the record amply supported the district court's finding, we find no error in its determination.

As for the amount of loss, the PSR indicated that State Financial Bank lost $11,590.00. Although White raised two objections in the addendum to the PSR, neither complained of this amount. He again failed to object at the sentencing hearing, but now argues that the district court erred because no one testified to that amount at trial. The only trial testimony indicated that officers recovered the $8,826 left in the grocery bag. The district court is entitled, however, to rely upon information detailed in the PSR. *See Bryant*, 420 F.3d at 657. Additionally, testimony established that the robber dropped money when leaving the bank and abandoned the bag after fleeing. It is reasonable to infer that the difference in amounts resulted from White dropping money, or taking what he could carry before abandoning the bag, or both. White offered no evidence at the hearing to dispute the amount of loss, even though he had the opportunity to do so. Because the PSR ostensibly reflected the amount reported lost by the bank, an amount that White never objected to prior to appeal, it was not clear error for the district court to find that the amount of loss exceeded $10,000.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

A true Copy:

    Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*