**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 17, 2007[*]
Decided April 18, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 06-2077

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois |
| *v.* | No. 05-40002-001 |
| LEMUEL T. CARROL, *Defendant-Appellant.* | Joe Billy McDade, *Judge.* |

**O R D E R**

Lemuel Carrol was found guilty by a jury of conspiracy to distribute cocaine base, 21 U.S.C. §§ 846, 841(a)(1). He was sentenced to 264 months' imprisonment. On appeal he argues that his constitutional and statutory rights to a speedy trial were violated and that the admission of certain testimony by government witnesses unfairly prejudiced the jury against him. We affirm.

---

[*] We granted the parties' joint motion to waive oral argument. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(f).

Carrol was arrested on January 4, 2005, and indicted on January 20, 2005, but his trial did not begin until December 5, 2005. Various factors contributed to the delay. The trial date originally was set for March 25, but both sides requested a continuance to prepare for trial. The court reset the trial date to April 25. In mid-April defense counsel withdrew due to a conflict of interest. The court vacated the trial date and appointed a new attorney who, in May, also withdrew due to a conflict of interest. The court appointed a third lawyer and granted his request for three weeks to review the case before a status conference. At that conference in June, the parties informed the court that they were looking for a trial date in September because defense counsel needed time to prepare and the court's calendar was full until September. Accordingly, the court set a trial date of September 12. Then in August the prosecutor requested a continuance because she could not try a case during September due to her pregnancy. Carrol objected, but the court granted the continuance, reasoning that the prosecutor had been with the case since the beginning and that the root cause of the delay was the substitution of defense counsel. The court set a new trial date for November 7. Later the judge, over Carrol's objection, rescheduled the trial for a later date in November because he was having surgery. And then again the court postponed the trial to December 5, with no objection from the government or defense counsel.

At trial the government set out to prove that, from 1997 to 2004, Carrol purchased drugs from various sources and resold them both to other dealers and to users in the Quad Cities, where he lived. The government's fourteen witnesses included a former drug user turned informant, a former dealer turned informant, and seven incarcerated drug dealers who either had bought drugs from Carrol or sold drugs to him for resale. The government sought to show that a conspiracy to distribute crack existed between Carrol, the seven drug dealers called as witnesses, and other dealers. The government also presented evidence of drug sales involving Carrol and an undercover police officer. The defense called five witnesses, including three police officers, Carrol's ex-girlfriend, and his ex-wife. Carrol did not testify. The defense attempted to discredit the government witnesses by pointing out inconsistencies or gaps in their testimony, but did not offer any evidence refuting Carrol's participation in drug sales. On December 7 the jury returned a verdict of guilty.

On appeal Carrol argues that the delayed commencement of his trial violated his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161-67, and the Sixth Amendment. Carrol, though, never moved to dismiss the indictment on the ground that his statutory right to a speedy trial was violated, so that contention is waived. *See* 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section."); *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004). Only the Sixth Amendment claim is before us. In considering a

constitutional challenge, courts apply a four-part test: (1) whether the delay in proceeding to trial was inordinate; (2) whether the government or the defendant is more to blame for that delay; (3) whether the defendant asserted his right to a speedy trial; (4) and whether the defendant suffered prejudice as a result of the delay. *Doggett v. United States*, 505 U.S. 647, 651 (1992); *United States v. White*, 443 F.3d 582, 589 (7th Cir. 2006).

Here there was no constitutional violation. The eleven-month delay between arrest and trial is long enough to be "presumptively prejudicial" and warrant review of the other factors, *see, e.g.*, *White*, 443 F.3d at 590 (finding that a delay of nine months between arrest and trial warrants a more searching analysis); *United States v. Ward*, 211 F.3d 356, 361 (7th Cir. 2000) ("Courts have generally found delays approaching one year to be presumptively prejudicial."), but since the further delay after the point of presumptive prejudice was not excessive, this factor does not count heavily in Carrol's favor, *see White*, 443 F.3d at 590. Neither does the reason for the delay favor Carrol. The parties and the court all shared some responsibility for the overall delay, but the bulk of it resulted from the withdrawal of Carrol's first two lawyers and the request of his third lawyer for adequate time to prepare. *See Barker v. Wingo*, 407 U.S. 514, 531 (1972) ("A valid reason, such as a missing witness, should serve to justify appropriate delay."); *White*, 443 F.3d at 590 (concluding that second factor was neutral where delay was caused by novel legal issue for which neither party deserved blame); *United States v. Taylor*, 196 F.3d 854, 861-862 (7th Cir. 1999) (concluding that second factor weighed against defendant where delays were attributable to defense and not government). The government sought only one continuance on its own, and that was due to the prosecutor's pregnancy. This delay does not suggest a deliberate prosecutorial effort to postpone the trial. *See Barker*, 407 U.S. at 531; *United States v. Koller*, 956 F.2d 1408, 1415 (7th Cir. 1992) (explaining that illness of government witness was valid reason for five-month delay). And, finally, Carrol suffered no demonstrable prejudice. He does not allege that the delay impaired his ability to defend against the charge, and instead he asserts that his pretrial detention between January 4 and December 5 was oppressive and caused him great anxiety and concern. While this is a proper factor to consider under the prejudice prong, it is insufficient to tip the scales in Carrol's favor. *See White*, 443 F.3d at 591; *Ward*, 211 F.3d at 361.

Carrol next presents several challenges to the admission of evidence at his trial. Defense counsel did not object during the trial to any of the testimony now challenged on appeal; therefore, our review is for plain error, *United States v. Pree*, 408 F.3d 855, 868 (7th Cir. 2005). To prevail Carrol must show that (1) an error occurred, (2) it was "plain," (3) it affected a substantial right, and (4) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Nitch*, 477 F.3d 933 (7th Cir. 2007); *see generally United States v. Olano*, 507 U.S. 725, 732-37 (1993) (discussing plain error review in detail).

Carrol contends that he was unduly prejudiced by evidence of his prior drug conviction and incarceration. The challenged testimony was elicited through David Harris and Jermaine Torrey, two of the seven imprisoned dealers who testified. Both said that they sold crack to Carrol for him to resell to other dealers and to users. Harris explained that he remembered when he first met Carrol because Carrol "had just gotten out of prison and I knew him through mutual friends." Torrey stated that Carrol had a history of "cooking up dope" and had "caught a state charge cooking up, manufacturing."

Carrol has failed to show how this isolated testimony prejudiced the outcome of his case. Carrol's defense was not premised on denying that he was involved in dealing crack; instead, the theory of defense was that Carrol was a small-time drug dealer, not a member of a distribution conspiracy. The evidence of Carrol's earlier conviction and incarceration did not impact that defense. *See United States v. Kibler*, 279 F.3d 511, 514-15 (7th Cir. 2002) (holding that witnesses' allusions to defendant's prior incarceration did not rise to the level of plain error where the defense's case was not premised on denying his involvement with drug sales).

Carrol also challenges the admission of testimony by informant Kelly Hinson and police officer Jeff Ven Huisen, who stated that they jointly made three "controlled purchases" of user amounts of crack cocaine from Carrol. Hinson had become an informant in February 2004 after police stopped Carrol's car while she was with him trying to purchase crack. Van Huisen testified that he was with Hinson three times in April 2004 when they bought crack from Carrol. Carrol argues that these sales were simply evidence of buyer-seller transactions, and so testimony about them should have been excluded under Federal Rule of Evidence 404(b) because the transactions were not probative of his participation in a conspiracy. *See United States v. Luster*, No. 05-4312, 2007 U.S. App. LEXIS 5937, at *7-8 (7th Cir. Mar. 15, 2007); *United States v. Townsend*, 924 F.2d 1385, 1394 (7th Cir. 1991).

The admission of this routine evidence was not error. To prove a conspiracy the government must show more than a buyer-seller agreement. *See United States v. Rivera*, 273 F.3d 751, 755 (7th Cir. 2001). The government must show "an agreement to commit a further crime, usually involving the subsequent distribution of drugs by the buyer." *Id*. We have employed four factors to determine the existence of a conspiracy: "1) length of relationship; 2) established method of payment (for example, fronting); 3) the extent to which the transactions were standardized; and 4) the level of mutual trust between buyer and seller." *Id*. In the end, what we are looking for is "evidence of a prolonged and actively pursued course of sales coupled with the seller's knowledge of and a shared stake in the buyer's illegal venture." *United States v. Thomas*, 284 F.3d 746, 752 (7th Cir. 2002) (internal quotation marks and citations omitted). Although a drug distribution

might not itself establish a conspiracy, a history of transactions may be evidence of conspiracy. *Thomas*, 284 F.3d at 750. Conspiracies, like other crimes, can be proved entirely by circumstantial evidence. *United States v. Williams*, 61 F.3d 534, 536 (7th Cir. 1995). The evidence provided by Hinson and Ven Huisen followed testimony by seven former drug dealers alleged to be part of the conspiracy. The evidence of these controlled purchases, therefore, tends to show a history of transactions making up the conspiracy.

Finally, Carrol asserts that he was unfairly prejudiced by the testimony of Alycia White, the former drug dealer who became an informant. White was told that no charges would be brought against her as long as she cooperated with the government, and Carrol apparently believes the arrangement should have disqualified her as a witness. But Carrol presents no legal argument against the admission of her testimony, and indeed none could be maintained. *See United States v. Dawson*, 425 F.3d 389 (7th Cir. 2005) (rejecting exclusionary rule for immunized testimony and noting that "a jury should be competent to discount appropriately testimony given under a powerful inducement to lie").

AFFIRMED.