Filed 7/13/20 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C087347 |
| Plaintiff and Respondent, | (Super. Ct. No. 83648) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| STEPHEN R. BRADLEY, | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 24, 2020, be modified as follows:

On page 9, delete the last sentence in the first full paragraph. The sentence begins "Defendant provides no" and replace it with the following sentences:

> But even if the district attorney was mistaken when she told the
> trial court that she was ready for trial *in October 2017*, as defendant
> asserts, we fail to see what bearing defendant's argument has on who
> is more to blame for the overall delay in bringing him to trial.
> The district attorney did not request a continuance of the October

1

2017 trial date, defense counsel did.  Thus, whether the district attorney was ready for trial in October 2017 does not impact the analysis under this *Barker* factor.

There is no change in the judgment.  Appellant's petition for rehearing is denied.

BY THE COURT:


/s/\
Robie, Acting P. J.


/s/\
Mauro, J.


/s/\
Hoch, J.

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C087347 |
| Plaintiff and Respondent, | (Super. Ct. No. 83648) |
| v. | |
| STEPHEN R. BRADLEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Allen Sumner, Judge. Affirmed.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Julie A. Hokans and Chung Mi Choi, Deputy Attorneys General, for Plaintiff and Respondent.

This appeal follows the trial court's order committing defendant Stephen R.

Bradley to the custody of the Department of State Hospitals for treatment and

1

confinement as a sexually violent predator. Due to a series of continuances, defendant's commitment trial did not begin until approximately three years after his probable cause hearing, and one year after he initially requested a trial. On appeal, defendant contends we should reverse the trial court's judgment and order his release because the delay denied him his federal constitutional due process right to a timely trial. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant served 24 years in prison for three sexual assault crimes. Shortly before his scheduled release date, the district attorney filed a petition seeking defendant's commitment to a state hospital as a sexually violent predator under Welfare and Institutions Code[1] section 6600 et seq. On October 15, 2014, the trial court found probable cause defendant was likely to engage in sexually violent predatory criminal behavior upon his release and ordered him housed in a state hospital pending trial.

The first court proceeding after defendant's probable cause hearing took place three months later, on January 15, 2015. At that time, and at each of the proceedings that followed for a span of two-and-one-half years, defense counsel requested continuances for various reasons. Some of the reasons were to allow the defense to prepare for trial and secure experts and for defendant to settle in at the hospital and engage in limited treatment.

In mid-April 2017, defendant demanded a trial. Two months later, in June, the court granted defense counsel's request for a trial date near the end of October 2017. At the trial readiness conference in October, however, defense counsel requested the court continue the trial another four months to February 2018, because defense counsel was scheduled for surgery. Defense counsel noted defendant's objection to this continuance

---

[1] All further section references are to the Welfare and Institutions Code unless otherwise indicated.

request; the court nonetheless found good cause to grant the request and set a new trial date for February 2018.

On the scheduled trial date of February 21, 2018, the prosecution presented its first motion to continue. The purpose of the continuance was to allow two of the district attorney's experts time to update their reports and a third expert time to prepare a new evaluation because a prior expert was no longer available due to retirement. The district attorney stated she believed she had requested the records and updated the evaluations necessary to proceed to trial when defendant made his request for a speedy trial in April 2017. And, when defense counsel told the district attorney in advance of the first scheduled trial date in October 2017 that he would be unavailable for trial due to a medical necessity, she focused her attention on other cases.

As the February 2018 trial date approached, the district attorney was working on several cases that involved evaluations from mental health experts and did not realize the evaluations she began reviewing to prepare for defendant's trial were originals and had not been updated. Two weeks before the February 2018 trial date, the district attorney crossed paths with defense counsel at the jail and realized her evaluations had not been updated. At this happenstance meeting, the district attorney also mentioned to defense counsel that she would need more time to prepare for trial as she had not yet received the report from the defense's expert. The district attorney immediately contacted the Department of State Hospitals and received confirmation that two of her experts would complete their reports in six weeks, and the third expert would complete her report a week later; these turnaround times were much shorter than usual. Accordingly, at the scheduled trial date in February 2018, the district attorney requested a continuance to the first week of April 2018, at which time the experts would be available to testify and their reports would be updated.

Defense counsel raised two main points in objecting to the continuance request. First, the Sexually Violent Predator Act (Act) requires the prosecution to prove the

diagnoses are current. Thus, in defendant's view, the district attorney was well aware of the necessity of obtaining updated evaluations but failed to secure them. Second, defendant believed the facts of his case mirrored those in *Litmon*, and asserted that granting the continuance would violate due process because the request was necessitated by the district attorney's neglect and would mean a delay of one year since defendant's demand for trial. (Citing *People v. Litmon* (2008) 162 Cal.App.4th 383 (*Litmon*).)

In considering the motion, the trial court described *Litmon* as a case demonstrating a systemic failure and an outlier in terms of delays in sexually violent predator trials. The court explained the delays in *Litmon* were not adequately justified on the record in light of Litmon's objection to them and his demand for trial. The court distinguished this case by the length of the district attorney's continuance request in the context of the pretrial proceedings viewed as a whole, the reasonableness of the district attorney's mistake, and the fact that defendant waited two-and-one-half years to demand a trial.

Over defendant's objection, the court found good cause to grant the district attorney's motion and continued the trial six weeks to the first week of April 2018. In April, the trial was trailed a week at the request of defense counsel, followed by one additional week at the request of both parties to accommodate necessary expert witnesses. Defendant did not object to either of those continuances. Defendant's trial commenced on April 19, 2018, three years and three months after his probable cause hearing, and approximately one year after defendant initially requested a trial.

DISCUSSION

I

*Defendant Did Not Forfeit His Federal Speedy Trial And Due Process Claim*

The People argue defendant forfeited his speedy trial and due process claim because he did not file a motion to dismiss on those grounds. Defendant disagrees, arguing his counsel asserted his rights in opposition to the motion to continue and,

4

because the trial court granted the continuance notwithstanding that argument, it would have been futile to move to dismiss. We find no forfeiture.

A California defendant generally has three sources of the right to a speedy trial: (1) the Sixth Amendment to the federal Constitution, as applied to the states through the due process clause of the Fourteenth Amendment; (2) article I, section 15 of the California Constitution; and (3) statutory enactments, such as Penal Code section 1382. (*People v. Harrison* (2005) 35 Cal.4th 208, 225.) In a sexually violent predator action, there are no statutory trial deadlines. (*Litmon v. Superior Court* (2004) 123 Cal.App.4th 1156, 1170-1171.) A commitment under the Act undoubtedly, however, constitutes a significant deprivation of liberty that requires due process protection. (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1194; *Addington v. Texas* (1979) 441 U.S. 418, 425 [60 L.Ed.2d 323, 330-331] ["civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"].)

In this case, defendant relies solely on his speedy trial and due process rights under the United States Constitution,[2] seeking to analogize his case to that of *Litmon* and discussing/applying the two federal tests applied therein -- the *Barker* and *Mathews* tests. (*Litmon*, *supra*, 162 Cal.App.4th at pp. 399-406, applying the tests set forth in *Barker v. Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101] (*Barker*) & *Mathews v. Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18] (*Mathews*).)

It is true state speedy trial rights "will be deemed waived unless the defendant *both* objects to the date set *and* thereafter files a timely motion to dismiss." (*People v. Wilson* (1963) 60 Cal.2d 139, 146.) The same is not true of the federal constitutional right to a speedy trial. (*Barker*, *supra*, 407 U.S. at pp. 525-528 [33 L.Ed.2d at pp. 113-115]; see

---

**2**    We note the Act does not specify a time by which a trial on a commitment proceeding must be commenced or concluded. (*People v. Sanders* (2012) 203 Cal.App.4th 839, 846; see § 6600 et seq.)

*People v. Seaton* (2001) 26 Cal.4th 598, 633.) In *Barker*, the United States Supreme Court rejected the "demand" rule, "explaining that a defendant's mere silence in the face of a continuance does not waive the constitutional right to speedy trial because a waiver occurs only when there is a conscious relinquishment of a known right." (*Seaton*, at p. 633.) It follows that, given defendant's objection to (rather than mere silence in response to) the continuance requested by the district attorney, defendant did not need to move to dismiss the case in order to preserve his federal speedy trial claim. (See *Seaton*, at pp. 633-634.)

II

*Defendant's Federal Speedy Trial And Due Process Rights Were Not Violated*[3]

We review a trial court's ruling on a motion to continue for abuse of discretion. (*People v. Mickey* (1991) 54 Cal.3d 612, 660.) Under this standard, "[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.)

Defendant discusses *Litmon* and the factual similarities that case shares with his case at length. He believes *Litmon* "was almost as directly on point as is possible for a case to be."

*Litmon* was a sexually violent predator case in which the Sixth District Court of Appeal concluded the defendant's right to due process had been violated for failure to bring him to trial in a timely manner. (*Litmon*, *supra*, 162 Cal.App.4th at pp. 389-390.) In that case, the critical delay occurred after a mistrial. (*Id.* at pp. 391-392.) One month after the mistrial, Litmon's counsel said she was ready to retry the matter immediately and her witnesses would be available within two weeks. (*Id.* at p. 392.) The court,

---

[3] The People's brief was particularly deficient in responding to defendant's arguments. There is, therefore, not much to refer to in discussing the People's position.

6

however, set the trial nine months off, in part, to allow the district attorney time to secure his witnesses' availability. (*Ibid*.) After the nine months had passed and just days before trial, the district attorney successfully moved for a continuance for two more months because he had not subpoenaed his witnesses in a timely fashion and some were unavailable. (*Id*. at pp. 393-394.) This amounted to a delay of 11 months in providing Litmon a trial after the case had been tried and resulted in a mistrial. The Sixth District Court of Appeal concluded the justification for the delays was inadequate and reversed the order imposing an indeterminate term of commitment as a sexually violent predator. (*Id*. at pp. 405, 412.)

Defendant asserts his case is like *Litmon* because, "when the time finally arrived for the long scheduled trial, the district attorney suddenly found herself unprepared for the trial because she had not bothered to take the normal basic steps that any reasonably competent attorney would take in preparing for trial." Although he does not allege the initial delay of two-and-one-half years in bringing him to trial violated his due process rights, he does contend the continuance granted to the district attorney, considered with the other delays that occurred after his demand for trial, creates a presumption of prejudice similar to the delays in *Litmon*.

As in *Litmon*, we analyze defendant's speedy trial and due process challenge under the standards articulated by the United States Supreme Court in *Barker* and *Mathews*. (*Litmon*, *supra*, 162 Cal.App.4th at pp. 396, 398-399.)

We conclude that, under either test, defendant's speedy trial and due process challenge fails. As we explain, this case is not like *Litmon*.

A

*The Barker Test*

The *Barker* test sets out four factors to be considered when determining whether a delay has resulted in a denial of due process: " '[the] length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant' " (*Litmon*,

7

*supra*, 162 Cal.App.4th at p. 398), with an extensive pretrial delay being presumed prejudicial (*id*. at p. 405; see *Barker*, *supra*, 407 U.S. at p. 530 [33 L.Ed.2d at p. 117]; *Doggett v. United States* (1992) 505 U.S. 647, 657 [120 L.Ed.2d 520, 532]).  None of these four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant." (*Barker*, *supra*, 407 U.S. at p. 533 [33 L.Ed.2d at p. 118].)  "The burden of demonstrating a speedy trial violation under *Barker*'s multifactor test lies with the defendant." (*People v. Williams* (2013) 58 Cal.4th 197, 233.)

"'The first *Barker* factor, the length of the delay, encompasses a "double enquiry." [Citation.]  "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay [citation], since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness.  If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.  [Citation.]  This latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time."'" (*People v. Superior Court (Vasquez)* (2018) 27 Cal.App.5th 36, 60-61, quoting *People v. Williams*, *supra*, 58 Cal.4th at p. 234.)  The pretrial delay of approximately three years following the filing of the petition in this case raises a presumption of prejudice.  (*Litmon*, *supra*, 162 Cal.App.4th at p. 405; *Doggett v. United States*, *supra*, 505 U.S. at p. 652, fn. 1 [120 L.Ed.2d at p. 528] ["lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year"].)

In applying the second factor, the reason for the delay, the United States Supreme Court has asked, "whether the government or the criminal defendant is more to blame for

8

th[e] delay." (*Doggett v. United States*, *supra*, 505 U.S. at p. 651 [120 L.Ed.2d at p. 528].) A delay meant to hamper the defense weighs heavily against the prosecution, while more neutral reasons such as negligence or overcrowded courts weigh less heavily. (*Barker*, *supra*, 407 U.S. at p. 531 [33 L.Ed.2d at p. 117].) Delays attributable to the defendant are effectively forfeited under the standard waiver doctrine. (*Id*. at p. 529 [33 L.Ed.2d at p. 115].)

Defendant's analysis of this factor is scant -- consisting of three sentences. Defendant merely asserts the district attorney in his case "was even more negligent and actually misled the court during the process," as compared to the district attorney in *Litmon*. He claims the district attorney told "the court she was ready for trial when she was not." Defendant provides no citation to the record to support this accusation; and our review of the record has revealed no such support.

Turning to the analysis of the second factor, we note that, although defendant asserted his right to a speedy trial in April 2017, it was defense counsel who requested the trial begin in October 2017. Defense counsel also requested the continuance in October, for which there was good cause, due to his impending surgery. Further, the initial trial dates in October 2017 and February 2018 were set at defense counsel's request, contrary to defendant's assertion that the court chose those dates to accommodate its own schedule. The delays caused by and continuances requested by defense counsel are properly attributed to defendant. (*Vermont v. Brillon* (2009) 556 U.S. 81, 93-94 [173 L.Ed.2d 231, 242].) The short delay attributable to the district attorney with the other continuances attributable to defendant render this case factually distinguishable from *Litmon*.

In sum, the second *Barker* factor, the reason for the delay, not only weighs against defendant, it rebuts the presumption of prejudice flowing from the three-year total delay and one-year delay following his demand for trial. That is because, at most, the government is responsible for six weeks of that delay.

9

In assessing the third *Barker* factor (i.e., defendant's assertion of his speedy trial right), we note "the weight ascribed to complaints of pretrial delay ordinarily depends upon their frequency and force." (*Litmon*, *supra*, 162 Cal.App.4th at p. 405.) "As the Supreme Court stated in *Williams*, ' "The issue is not simply the number of times the accused acquiesced or objected; rather, the focus is on the surrounding circumstances, such as the timeliness, persistence, and sincerity of the objections, the reasons for the acquiescence, whether the accused was represented by counsel, the accused's pretrial conduct (as that conduct bears on the speedy trial right), and so forth. [Citation.] The totality of the accused's responses to the delay is indicative of whether he or she actually wanted a speedy trial." ' " (*People v. Superior Court (Vasquez)*, *supra*, 27 Cal.App.5th at p. 62.)

As defendant notes, he and Litmon both asserted their right to a speedy trial approximately one year before the trial. (*Litmon*, *supra*, 162 Cal.App.4th at p. 405.) Litmon, however, strongly opposed postponement of his retrial at the same time his counsel announced she was ready to proceed to trial. (*Ibid*.) Litmon also filed a motion to dismiss four months later, and again moved to dismiss after the district attorney requested another continuance. (*Id*. at pp. 394, 405.) Those same circumstances are not present here. Defendant waited approximately two-and-one-half years following his probable cause hearing to demand a trial. "[A] belated assertion of a procedural due process right to a speedy [sexually violent predator] trial is entitled to less weight than a prompt assertion of such right." (*Litmon*, at p. 405.) Although defendant objected to his counsel's continuance request in October 2017 and the district attorney's continuance request in February 2018, he did not file motions to dismiss and did not object to the final two continuances. Thus, although defendant asserted his right to a speedy trial, he did not do so with great frequency or force, as Litmon did.

For the fourth and final *Barker* factor, prejudice to the defendant, we must consider the circumstances of this case in light of the interests the speedy trial right is

10

intended to protect. (*Barker*, *supra*, 407 U.S. at p. 532 [33 L.Ed.2d at p. 118].) Those interests, as identified by the United States Supreme Court, are "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." (*Ibid*.)

Defendant does not claim his defense was impaired by the delay. Rather, defendant contends his lengthy pretrial confinement was oppressive, as explained in *Litmon*. (*Litmon*, *supra*, 162 Cal.App.4th at pp. 405-406.) He further states his "post-deprivation pretrial delay" was not mitigated by the existence of an intervening trial and his harm was not mitigated by any of the other *Barker* factors. But Litmon's mistrial did not mitigate the delay in his case, it heightened the risk he was being confined in error and raised questions that were not answered to the appellate court's satisfaction as to why an 11-month delay was necessary following a completed trial. (*Litmon*, at pp. 402, 405.)

"Significant pretrial incarceration may support a presumption of prejudice, but this prejudice 'unenhanced by tangible impairment of the defense function and unsupported by a better showing on the other factors than was made here, does not alone make out a deprivation of the right to a speedy trial.' " (*United States v. White* (7th Cir. 2006) 443 F.3d 582, 591.) The pretrial confinement defendant experienced is not enough to establish he was denied his federal speedy trial right when the other *Barker* factors are taken into account. The trial court thus did not abuse its discretion in granting the district attorney's motion to continue the trial date by six weeks.

B

*The Mathews Test*

We reach the same result under the *Mathews* framework, which is used to determine what procedures due process requires in various contexts. (*Mathews*, *supra*, 424 U.S. at pp. 334-335 [47 L.Ed.2d at p. 33].) The *Mathews* test balances " ' "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any,

11

of additional or substitute procedural safeguards; and [third], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." ' " (*Litmon*, *supra*, 162 Cal.App.4th at p. 396.) Defendant argues that, due to the similarities between his case and *Litmon*, an analysis under the *Mathews* framework demonstrates we should overturn the trial court's commitment order. We disagree because a number of circumstances distinguish this case from *Litmon*, and our application of the *Mathews* due process analysis leads us to a different result.

Under the first prong of the *Mathews* analysis, it is clear defendant has a significant liberty interest, as did Litmon. The right to be free from involuntary confinement is fundamental and deprivation of this right requires due process. (*Mathews*, *supra*, 424 U.S. at p. 335 [47 L.Ed.2d at p. 33]; *Litmon*, *supra*, 162 Cal.App.4th at p. 400.)

Defendant notes that, under the second factor, both he and Litmon experienced a lengthy pretrial delay. He further contends that, unlike in *Litmon*, "the delay in [defendant's] trial was not in any way to his benefit," and "[defendant] had not had a prior [sexually violent predator] commitment that was being extended, nor had he had a trial on the current commitment with a hung jury to justify some of the delay." We fail to understand the point defendant attempts to make.

As explained *ante*, the intervening mistrial in *Litmon* added considerable weight to the risk Litmon was being deprived of his liberty in error. (*Litmon*, *supra*, 162 Cal.App.4th at p. 400.) In light of this risk, the prosecution's justification for needing additional time to secure witnesses, after the district attorney had requested time to secure their attendance and had nine months to do so, was inadequate to excuse further delay. (*Id*. at p. 404.) It was an important consideration in the court's due process analysis that is not present in this case. (*Id*. at pp. 402-403.) Here, there was no preceding mistrial that heightened the risk of a due process violation. Moreover, although Litmon had

12

previously been committed as a sexually violent predator for a limited term, his confinement continued pending trial under consolidated second and third petitions that both carried two-year terms. (*Litmon*, *supra*, 162 Cal.App.4th at pp. 390, 403.) This meant that, due to the delay in his case, Litmon was confined for an entire two-year commitment term before he had been tried for that term, a fact that was highly relevant in the court's due process analysis. (*Id*. at pp. 402-403.)

Here, in contrast, there was no substantial risk that defendant's pretrial confinement was erroneous. When defendant demanded a speedy trial in April 2017, the likelihood the probable cause findings as to defendant might have been mistaken was minimal. The trial court found the petition to be supported by probable cause after a contested hearing in which three state evaluators concluded defendant had a serious diagnosable mental disorder. The only state evaluator who did not conclude defendant suffered from a diagnosable mental disorder acknowledged her record review included sparse information about defendant's personal history. (Cf. *People v. Landau* (2013) 214 Cal.App.4th 1, 36 [risk of erroneous deprivation not substantial where trial court had found probable cause, despite lack of contested hearing and one state evaluator's opinion that defendant was not a sexually violent predator].)

As to the third *Mathews* factor, the state has a strong interest in protecting the public from the dangerous tendencies of some who are mentally ill. Defendant argues, however, there is no reason the state could not design a system that would require sexually violent predator petitions to be filed a year before the prisoner's scheduled release date to allow such trials to be held before the prisoner is released. He further asserts that, since most sexually violent predator commitment petitions are filed near the end of the individual's prison term, an unnecessary potential due process violation is "baked into the system right from its start." In support of his argument, defendant mentions the following statement in *Litmon* -- "the norm to comport with the demands of procedural due process in the context of involuntary [sexually violent predator]

13

commitments must be a trial in advance of the potential commitment term . . . ." (*Litmon*, *supra*, 162 Cal.App.4th at p. 401.)

First, this proposition is not supported by precedent, nor is it required by the Act. (§ 6600 et seq.) Second, neither defendant nor Litmon claimed the initial pretrial delay violated due process or that the Constitution requires a trial prior to a potential commitment term as a sexually violent predator. (*Litmon*, *supra*, 162 Cal.App.4th at p. 402.) Further, defendant has no basis to complain of the initial delay in his case because it came at his request.

As in the *Barker* analysis, the reasons for the delay are particularly important when applying the *Mathews* analysis to sexually violent predator proceedings. (See *People v. Landau*, *supra*, 214 Cal.App.4th at pp. 36, 41 [considering only unconsented delay under *Mathews*]; *Litmon*, *supra*, 162 Cal.App.4th at p. 404 [suggesting initial nine-month delay did not violate due process absent showing it was due to systemic problems rather than commonplace trial-scheduling challenges].) As discussed *ante*, defendant requested much of the delay and the record reveals one delay of six weeks attributable to the prosecution, which had a strong interest in continuing to seek the commitment of an alleged sexually violent predator.[4] Given these circumstances, under *Mathews*, too, the trial court did not deny defendant due process by granting the district attorney's motion to continue.

---

[4] Defendant argues "[i]t is difficult to understand how the trial court could believe that the *Litmon* court was saying that [the initial delay of] eight or nine months was too much but six months -- the initial delay in [defendant's] case -- was clearly okay." Yet he acknowledges that there was good cause to grant his attorney's request for a continuance due to his attorney's scheduled surgery and states the "due process violation arises out of the trial court's decision to grant the last continuance."

DISPOSITION

The order is affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Mauro, J.

/s/
Hoch, J.

15